**COMMONWEALTH of Pennsylvania**

v.

**Gaylend L. YOUNG, Appellant.**

Superior Court of Pennsylvania.

Submitted April 6, 2009.

Filed Jan. 6, 2010.

Nathan L. Boob, Assistant District Attorney, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., KLEIN * and COLVILLE,** JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Appellant, Gaylend L. Young, appeals the judgment of sentence entered following his conviction for various sexual offenses against his minor son. Finding no error, we affirm.

¶ 2 In February of 2000, appellant was charged in three separate criminal complaints as to three separate incidents of sexual molestation involving his son. The convictions on appeal today were listed at trial docket number CP–14–CR–345–2000 ("the Lezzer Lumber incident") and involved appellant forcing his son to perform oral sex on him in a restroom at a business known as Lezzer Lumber in State College sometime during 1994 or 1995. After being contacted by police on the Lezzer Lumber incident, appellant admitted, in an interview and in a written statement, to four total incidents involving his son. Thereafter, appellant was also charged at trial docket numbers CP–14–CR–346–2000 ("the Pleasant Gap incident") and CP–14–CR–347–2000 ("the Bellefonte incident"), and these were consolidated for trial with the matter presently on appeal.

¶ 3 On November 2, 2000, appellant filed multiple motions *in limine*, one of which sought to bar admission of appellant's confession to the Bellefonte incident.[1] Fol-

Ronald McGlaughlin, State College, for appellant.

---

* This decision was reached prior to the retirement of Judge Klein.

** Retired Senior Judge assigned to the Superior Court.

1. We note that the Dissent attempts to cast appellant's statements in regard to the Bellefonte incident as denials or exculpatory statements rather than confessions. We completely disagree with this interpretation. In his tape-recorded statement of January 24, 2000, appellant admitted that he permitted the child victim to fondle his genitals for 30 seconds. (*See* Commonwealth's Exhibit 9 at 3.) Appellant also stated that the child had an erection and was touching appellant for the purpose of

lowing a hearing on November 3, 2000, the trial court granted one of the motions *in limine*, and barred the Commonwealth from placing the Bellefonte incident before the jury. The court found that because the victim could not recall the incident and that proof would be based solely upon appellant's confession, the ***corpus delicti*** rule would be thereby violated. Trial thereafter proceeded upon the remaining two criminal complaints. At trial on the remaining charges, the court did, however, allow a detective to read into the record appellant's confession, which did include the admission to the Bellefonte incident. (Notes of testimony, 11/6–7/00 (testimony of Steven Bosak and Susan Young) at 8–11.)

¶ 4 On November 8, 2000, at trial docket number CP–14–CR–345–2000 (the Lezzer Lumber incident), the jury returned guilty verdicts for involuntary deviate sexual intercourse, indecent assault, indecent exposure, and corruption of minors. The jury acquitted appellant of all charges at trial docket number CP–14–CR–346–2000 (the Pleasant Gap incident). On March 1, 2001, the trial court sentenced appellant to an aggregate term of 6 to 12 years' imprisonment.

¶ 5 On March 12, 2001, appellant filed a post-sentence motion. On May 8, 2001,

sexual pleasure. (*Id.* at 4.) The Dissent accepts, as a complete denial of wrongdoing, appellant's explanation of this event to the effect that the child "got me down" and "got my pants down" and was thereafter able to continue fondling appellant's genitals for 30 seconds without appellant being able to stop the child aggressor. (*See also* Commonwealth Exhibit 7 at paragraph 1.) The child victim was born on July 9, 1984. (Notes of testimony, 2/1/05 at 58.) Appellant was born on November 15, 1953. (*See* Criminal Complaint.) In his written statement, appellant stated that the Bellefonte incident occurred somewhere from 1989 to 1991. Therefore, appellant was, at most, 38 years old at the time of the event and the child was, at most, 7 years old. Thus, appellant's ridiculous explanation would have us believe that a 7–year-old child overpowered a 38–year-old man, and kept him subdued for 30 seconds while the child forcibly fondled the man's genitals. Even if we accept that the child was the initial aggressor, appellant admitted, at the very least, that he permitted the fondling to continue for 30 seconds, and that he was aware that the fondling was for the purpose of arousing the sexual desire of the child complainant. Simply stated, this is a confession to indecent assault, which prohibits indecent contact for the purpose of arousing the sexual desire of either the defendant or the complainant. *See* 18 Pa.C.S.A. § 3126(a)(7). The Dissent also asserts that appellant's statements regarding the Pleasant Gap incident did not amount to a confession. Again, we completely disagree. Appellant stated that this incident occurred in 1996. Therefore, appellant would have been 43 years old and the child, 12 years old. Appellant claimed that the child was again the aggressor, but appellant also admitted that he permitted the child to have his mouth on appellant's penis for 30 seconds. (Commonwealth Exhibit 9 at 9–10.) Appellant also admitted that he had an erection while the child's mouth was on his penis. (*Id.* at 10.) Again, even if we accept that the child was the initial aggressor, appellant permitted the sexual contact to continue for 30 seconds. It is incomprehensible to accept that appellant could not have stopped the conduct immediately. Thus, this was a confession to involuntary deviate sexual intercourse with a child. *See* 18 Pa.C.S.A. § 3123(b). The Dissent characterizes our analysis here as making a credibility determination. We disagree. We fully accept as credible appellant's statements on their face, even to the extent that appellant positions his statements as exculpatory statements. All that our analysis points out is that even where an individual makes what he believes to be an exculpatory statement, he may inadvertently divulge information that amounts to an admission or a confession. Here, appellant attempted to exculpate himself by painting the child as the aggressor. In doing so, however, he also confessed that he, as an adult, permitted his son, a child, to fondle his penis for 30 seconds and that it was done for the child's sexual gratification. That is a confession to indecent assault. The Dissent is incorrect when it states that appellant's statement, by its literal words, is exculpatory.

the trial court granted appellant a new trial because appellant's confession was sent out with the jury in violation of Pa. R.Crim.P. 1114, 42 Pa.C.S.A.[2] On June 6, 2001, the Commonwealth filed a notice of appeal. The trial court entered an order on June 11, 2001, directing the Commonwealth to file a concise statement of matters complained of on appeal. The Commonwealth failed to timely respond, and on May 8, 2003, this court affirmed the granting of a new trial, finding that the Commonwealth had waived all issues pursuant to *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). *Commonwealth v. Young,* 829 A.2d 368 (Pa.Super.2003) (unpublished memorandum), *appeal denied,* 577 Pa. 680, 843 A.2d 1238 (2004).

¶ 6 At his second trial, the trial court again permitted appellant's confession to be read into the record, which confession admitted the Bellefonte incident, of which the court had previously barred prosecution, as well as the Pleasant Gap incident, of which appellant had been acquitted at his first trial. (Notes of testimony, 2/1/05 at 244–248.) Appellant was again convicted of involuntary deviate sexual intercourse, indecent assault, indecent exposure, and corruption of minors. On April 26, 2005, the trial court imposed an aggregate term of 7 to 14 years' imprisonment.[3] Appellant timely filed his notice of appeal on May 24, 2005, and also timely filed a concise statement of matters complained of on appeal upon the trial court's order.

¶ 7 On November 2, 2006, this court dismissed appellant's appeal because of substantial briefing defects and for failing to supply a complete record in not providing the transcript of the November 3, 2000 motion *in limine* hearing. *Commonwealth v. Young,* 915 A.2d 153 (Pa.Super.2006) (unpublished memorandum). The court found that the inadequate brief prevented it from determining whether the transcript of the November 3, 2000 hearing was necessary to review the issues raised.

¶ 8 On November 20, 2007, appellant timely filed a PCRA petition in which he claimed that direct appeal counsel had provided ineffective assistance. On June 25, 2008, the trial court reinstated appellant's direct appeal rights. Notice of appeal was timely filed on July 22, 2008, and a timely concise statement of matters complained of on appeal was filed upon the trial court's order.

¶ 9 Appellant raises the following issues on appeal:

I. DID THE TRIAL COURT ABUSE ITS DISCRETION IN ADMITTING CERTAIN ALLEGATIONS OF SEXUAL CONDUCT BETWEEN THE DEFENDANT AND THE ALLEGED VICTIM AT THE TIME OF DEFENDANT'S TRIAL?

II. IN THE EVENT IT IS DETERMINED THAT THE OTHER INCIDENTS OF ALLEGED SEXUAL CONDUCT BETWEEN THE DEFENDANT AND THE ALLEGED VICTIM WERE OTHER-

---

**2.** Rule 1114 was renumbered as Rule 646, effective April 1, 2001.

**3.** The opinion of the trial court asserts that a term of 7 years and 1 month to 15 years' imprisonment was imposed. (Trial court opinion, 8/17/05 at 1.) Meanwhile, the Guideline Sentence Forms indicate that an aggregate term of 6 to 12 years was imposed. Our total is based upon the actual sentencing or-

ders which imposed 6 ½ to 13 years' imprisonment for involuntary deviate sexual intercourse, found that indecent assault merged for sentencing purposes, imposed a concurrent sentence of one month to one year for indecent exposure, and imposed a consecutive sentence of 6 to 12 months for corruption of minors.

WISE ADMISSABLE [SIC], DID THE PREJUDICE TO DEFENDANT BY THE ADMISSION OF THOSE INCIDENTS OUTWEIGH ANY PROBATIVE VALUE OF THE SAME?

Appellant's brief at 10.

¶ 10 In his first issue, appellant complains that the trial court improperly admitted his confession to the Pleasant Gap incident because he had been acquitted on those charges. Appellant asserts that the admission of his confession to the Bellefonte incident was likewise improper because prosecution on those charges had been barred under the *corpus delicti* rule. We begin our analysis by noting our standard of review:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa.Super.2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Id.*

*Commonwealth v. Bishop*, 936 A.2d 1136, 1143 (Pa.Super.2007), *appeal denied*, 597 Pa. 710, 951 A.2d 1159 (2008).

¶ 11 Preliminarily, we note that the Commonwealth argues that appellant has waived his issues because he has still not had the November 3, 2000 motion *in limine* hearing transcribed and placed in the record. Unlike the prior panel of this court, this panel is presented with an adequate appellate brief. We find that the November 3, 2000 hearing transcript is unnecessary to our review of appellant's issues because such hearing would not have pertained to evidentiary matters raised on appeal, but rather would have been confined solely to legal arguments and conclusions of law, for which our review is plenary. *See Commonwealth v. Johnson*, 969 A.2d 565 (Pa.Super.2009) (suppression court's conclusions of law are not binding on appellate court). Therefore, we find no waiver.

¶ 12 Appellant's complaints go to the admission of evidence of other crimes during his trial for the Lezzer Lumber incident. We observe that while evidence of other crimes is generally inadmissible, an exception applies instantly:

> In general, evidence of other wrongful conduct not charged in the information on which the defendant is being tried is inadmissible at trial except in certain limited circumstances. One such exception arises in the prosecution of sexual offenses. Evidence of prior sexual relations between defendant and his or her victim is admissible to show a passion or propensity for illicit sexual relations with the victim. This exception is limited, however. The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a **continuing course of conduct**. The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations.

*Commonwealth v. Wattley*, 880 A.2d 682, 686 (Pa.Super.2005), *appeal dismissed as improvidently granted*, 592 Pa. 304, 924 A.2d 1203 (2007) quoting *Commonwealth v. Knowles*, 431 Pa.Super. 574, 637 A.2d 331, 333 (1994) (emphasis added by *Wattley* court).

¶ 13 Appellant argues that the introduction of his confession to the Pleasant Gap incident violates the collateral estoppel component of appellant's Double Jeopardy rights, because appellant had been acquitted of the charges related to that incident. We disagree.

¶ 14 The United States Supreme Court ruled that the Double Jeopardy Clause incorporated the doctrine of collateral estoppel in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe,* the defendant robbed a group of men playing poker. The defendant was acquitted in an initial trial for robbing one of the men, but was subsequently convicted in a later trial for robbing another of the men. The United States Supreme Court reversed the conviction, holding that the defendant's acquittal in the earlier trial precluded the State from charging him in the second case, because to secure a conviction, the jury in the second case would have had to reach a diametrically opposite conclusion as to the ultimate issue in the case, which was the same for both trials.

¶ 15 In *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), however, the United States Supreme Court ruled that in a subsequent trial for bank robbery, the victim of a home burglary was permitted to testify that the defendant and another man had burgled her home, even where the defendant had previously been acquitted of that burglary. The Court found that there was no collateral estoppel because the prior acquittal in the burglary trial did not determine the ultimate issue in the robbery trial.

¶ 16 The case before us is more akin to *Dowling* than to *Ashe.* In the case before us, although the two cases involve the same defendant, the same victim, and the same criminal sexual accusations, the two crimes arose from separate incidents. In *Ashe,* the two criminal trials arose from the same incident, while in *Dowling* the incidents were distinct. Thus, the acquittal in the Pleasant Gap incident did not determine the ultimate issue in the Lezzer Lumber incident, and permitting appellant's confession to the Pleasant Gap incident to be read into the record at the Lezzer Lumber trial does not run afoul of the collateral estoppel component of the Double Jeopardy Clause.

¶ 17 Appellant argues that *Dowling* only controls federal constitutional law and that the Pennsylvania Supreme Court may provide greater protection for Pennsylvania citizens by more strictly construing the Double Jeopardy provisions of the Pennsylvania Constitution. Unfortunately for appellant's position, he concedes that he is unable to cite to any authority from our supreme court where the court did, in fact, interpret our state constitution more strictly in this regard. (Appellant's brief at 30.) Moreover, appellant has not offered any reasons why this court or our supreme court would or should follow a stricter interpretation of the collateral estoppel component of Double Jeopardy under the Pennsylvania Constitution. Where an appellant does not provide argument that the state constitution affords greater protection, the state and federal provisions are treated as coextensive. *Commonwealth v. Hall,* 574 Pa. 233, 830 A.2d 537 (2003).

¶ 18 Appellant also argues that the admission of his confession to the Pleasant Gap incident, following acquittal on the charges, and admission of his confession to the Bellefonte incident, where trial was barred by the **corpus delicti** rule, was in violation of Pa.R.E. 404, 42 Pa.C.S.A.

¶ 19 Appellant posits that because he was acquitted in the Pleasant Gap incident, his actions there no longer qualify as prior crimes or bad acts under Rule 404(b).

However, as the Commonwealth indicates, Rule 404(b) is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. *Commonwealth v. Ardinger,* 839 A.2d 1143 (Pa.Super.2003). Thus, the admission of the Pleasant Gap confession does not violate Rule 404(b).

¶ 20 As for the Bellefonte incident, appellant offers no real reasons why this evidence should not qualify as admissible under Rule 404(b). Appellant merely restates the purpose of the *corpus delicti* rule, which is to guard against the hasty and unguarded nature of confessions so as to ensure that there will not be a conviction where no crime has been committed. Likewise, the Dissent argues that allowing admission of evidence of the Bellefonte incident during the trial for the Lezzer Lumber incident works directly against the purpose of the *corpus delicti* rule because the unreliable Bellefonte admissions, unsupported by other evidence, will still serve to secure a conviction, albeit for a different crime. Our supreme court has previously ruled, however, such a situation *does not* implicate the *corpus delicti* rule:

> "The purpose of the corpus delicti rule is to guard against 'the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.' " *Id.* (citing *Commonwealth v. Turza,* 340 Pa. 128, 16 A.2d 401, 404 (1940)). Here, appellant's confession to Porter was not to the murders and other offenses with which he was charged, but rather concerned an uncharged robbery that occurred prior to the crimes at issue. In an instance such as that presented *sub judice,* there was no possibility that appellant's confession would lead to his conviction for an earlier robbery with which he was not charged, and thus the purpose of the corpus delicti rule is not implicated.

*Commonwealth v. Edwards,* 588 Pa. 151, 184–185, 903 A.2d 1139, 1158 (2006) (underlining emphasis added), *cert. denied, Edwards v. Pennsylvania,* 549 U.S. 1344, 127 S.Ct. 2030, 167 L.Ed.2d 772 (2007).

¶ 21 Using the confession of the Bellefonte incident in the trial of the Lezzer Lumber incident will not work against the purposes of the *corpus delicti* rule. No conviction will thereby be had as to the Bellefonte incident, which is supported only by appellant's confession. Rather, conviction can only be obtained as to the Lezzer Lumber incident, which is supported by evidence in addition to appellant's confession. According to *Edwards,* the *corpus delicti* rule is not implicated where there is no possibility that the defendant will be convicted for the crime confessed to, regardless of whether appellant may later be convicted of a different crime at a trial in which the confession is subsequently introduced. Again, Rule 404(b) has not been violated.

¶ 22 Appellant also argues that the admission of his confession to the Pleasant Gap and Bellefonte incidents violated Rule 404(b)(3) because the prejudice to him exceeded the probative value of the evidence. We find that the trial court properly insulated appellant from such prejudice by its instructions to the jury. The court told the jury that the evidence of the Pleasant Gap and Bellefonte incidents was admitted solely to demonstrate a passion or a propensity by appellant for illicit sexual relations with this particular victim, and must not be considered as evidence that appellant was of bad character or had tendencies from which guilt might be inferred instantly. This mirrors the language in *Wattley.* We also note that appellant's counsel, in closing, reminded the jury that appellant had been acquitted by another

jury as to the Pleasant Gap incident, and had not been tried as to the Bellefonte incident because of inadequate evidence under the *corpus delicti* rule. (Notes of testimony, 2/2/05 at 582 and 581, respectively.) We find that these factors mitigated the prejudicial effect of the evidence such that it did not outweigh the probative value of the evidence.

¶ 23 In closing, we note that the admissibility of prior bad acts for which the defendant has been acquitted has been considered in other jurisdictions with varying results. The Supreme Court of Florida has held, as a matter of fundamental fairness, that evidence of a prior crime for which appellant has been acquitted, cannot be admitted at a subsequent trial on a different offense. *State v. Perkins,* 349 So.2d 161 (Fla.1977). Likewise, the Supreme Court of Minnesota has adopted a similar rule. *State v. Wakefield,* 278 N.W.2d 307 (Minn.1979). Tennessee, on the other hand, does not allow admission of such evidence because the acquittal renders the evidence more prejudicial than probative. *State v. Holman,* 611 S.W.2d 411 (Tenn.1981).

¶ 24 Nonetheless, our holding today places Pennsylvania with the majority of jurisdictions that have ruled on this issue. Upon review of an article in American Law Reports, we observe that the number of jurisdictions allowing introduction of this evidence greatly outnumbers those jurisdictions that do not permit it. *See* 25 A.L.R.4th 934. *See e.g. People v. Beamon,* 8 Cal.3d 625, 105 Cal.Rptr. 681, 504 P.2d 905 (Cal.1973) (evidence of prior highjacking not rendered inadmissible by subsequent acquittal so long that evidence of the acquittal is entered and jury instructed as to limited use of prior bad act evidence); *See State v. Schlue,* 129 N.J.Super. 351, 323 A.2d 549 (N.J.Super.A.D.1974) (fact that appellant had been acquitted on earlier charges did not bar introduction; admission of such testimony, although it relates to offenses for which defendant had been acquitted, is upheld by great weight of authority throughout country); *State v. Smith,* 271 Or. 294, 532 P.2d 9 (Or.1975) (evidence of other crimes is admissible if it is substantially relevant; acquittal alone, though it may lessen probative value of evidence of the other offense, does not render it inadmissible). A majority of these jurisdictions allow or require that the jury be informed of the acquittal. A small minority actually bar the defendant from informing the jury of the acquittal. *See State v. Schlue.* Thus, we find our ruling today to be in accord with that of the majority of jurisdictions.

¶ 25 Accordingly, having found no merit to appellant's issues on appeal, we will affirm the judgment of sentence.

¶ 26 Judgment of sentence affirmed.

¶ 27 COLVILLE, J. files a Dissenting Opinion.

DISSENTING OPINION BY COLVILLE, J.:

BEFORE: FORD ELLIOTT, P.J., KLEIN and COLVILLE *, JJ.

¶ 1 While I offer a more detailed analysis *infra,* I make the following observation at the outset. The Majority is setting a precedent, perhaps unwittingly, that will make it more difficult for the Commonwealth to introduce a defendant's statements than the law requires. My disagreement with the Majority on this point is not that the increased burden happens to fall on one party or the other—in this case the Commonwealth—but simply that the Majority's approach will make the admission of various statements, exculpatory

---

* Retired Senior Judge assigned to the Superior Court.

on their face, subject to the *corpus delicti* rule when they should not be. More particularly, the Majority is saying that, when a court considers a defendant's statement which, by its literal words, is exculpatory, a court can nonetheless assess the credibility of that statement, find it to be a ridiculous attempt at exculpation and thereby characterize the statement as inculpatory. Once a court does so, the court then makes the statement subject to the *corpus delicti* rule. Thus, using a credibility assessment, a court can impose upon the Commonwealth the burden to prove *corpus delicti* before the statement, exculpatory on its face, could be admitted.

¶ 2 I am saying that, without a credibility assessment superimposed by the court, a defendant's statement exculpatory on its face can be admitted without proof of *corpus*. *Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820, 824 (1998) (abrogated on other grounds by *Commonwealth v. Taylor*, 574 Pa. 390, 831 A.2d 587, 595–96 (2003)); *Commonwealth v. Rivera*, 828 A.2d 1094, 1104 (Pa.Super.2003). One might immediately ask why the Commonwealth would want to introduce a defendant's statement which is exculpatory on its face. The instant case itself provides the answer: the Commonwealth may well believe, as the Majority does in this case, that certain statements exculpatory on their face are so ridiculous that they work to inculpate the defendant. As such, the Commonwealth might wish to introduce such statements.

¶ 3 It is true that, based on the particular facts of the instant case, I would ultimately find it was error to admit certain evidence, including Appellant's statements concerning incidents or alleged incidents at Bellefonte, for which Appellant was not tried, and Pleasant Gap, for which he was acquitted. However, my decision is based on Pa.R.E. 403, 404 and the specific facts of this case.

¶ 4 It is also true that, later in this Dissent, I caution against the admission of confessions and admissions without proof of *corpus* during a trial involving other offenses to which the confessions and admissions do not relate. On this issue, I do urge that the Commonwealth should be required to prove the *corpus* of the confessed or admitted crime. However, my reasoning is based on the widely acknowledged infirmities in confession/admission evidence. Moreover, I do not go so far as the Majority does in finding that exculpatory statements can be subjected to the rigors of the *corpus delicti* rule merely because this Court or a trial court does not believe the exculpation.

¶ 5 My further analysis follows.

¶ 6 It is important to clarify the nature of the various statements made by Appellant because only confessions and admissions are subject to the *corpus delicti* rule. *Verticelli*, 706 A.2d at 824; *Rivera*, 828 A.2d at 1104. Thus, if a statement is a denial or is exculpatory on its face, the Commonwealth need not establish *corpus delicti* before the statements are admitted. *Verticelli*, 706 A.2d at 824; *Rivera*, 828 A.2d at 1104. In any event, the statements in question in this case include oral and written ones made on January 17, 2000, both of which concern Lezzer Lumber, the incident for which Appellant was tried in this case. They also include an oral, tape-recorded statement of January 24, 2000, and a written statement of January 26, 2000. These last two statements relate to four separate occurrences: Bellefonte # 1, Bellefonte # 2, Pleasant Gap, and Lezzer Lumber.[1]

---

1. The Majority does not distinguish between Bellefonte # 1 and Bellefonte # 2.

¶ 7 There has grown up in this case the impression that, in his various oral and written statements, Appellant confessed to four incidents of sexual molestation. He did not do so. In his various statements, Appellant did indeed discuss, at points, the aforementioned four separate incidents. However, as to at least two of those incidents (*i.e.*, Bellefonte #1 and Pleasant Gap), Appellant's statements asserted it was his son who attempted or initiated sexual contact with Appellant. *See N.T.*, 02/01/05, at 244–47, 251; Commonwealth's Exhibit 9 at 2–4, 7–10. Further, the context of the statements relating to Bellefonte #1 and Pleasant Gap indicated that Appellant did not reciprocate or otherwise willingly participate in the sexual contact and that he stopped his son from proceeding therewith. N.T., 02/01/05, at 244–47; Commonwealth's Exhibit 9 at 2–4, 7–10. Thus, at least as to those two incidents, Appellant's remarks were more in the nature of denials or exculpatory statements than confessions or admissions.[2]

¶ 8 More specifically, as to Bellefonte #1, Appellant's written statement of January 26, 2000, indicated that, while he and his son were wrestling or playing on the floor, his son "got [Appellant's] pants down, underwear still on, and was going to touch [Appellant] near the penis area." N.T., 02/01/05, at 245. According to Appellant, he then told his son to stop, and the son did so. *Id.*

¶ 9 Appellant's tape-recorded statement concerning Bellefonte #1 was similar to his written remarks, although the tape-recorded statement asserted that his son fondled Appellant's genital area rather than merely attempted to do so. Commonwealth's Exhibit 9 at 2–4.

¶ 10 Regarding Pleasant Gap, Appellant asserted in writing on January 26, 2000, that, while he and his son were playing on the floor, Appellant told his son to get ready for bed. N.T., 02/01/05, at 246. Appellant recounted that his son became angry, pushed Appellant down, pulled down Appellant's sweat pants, and touched Appellant's penis for two or three seconds. *Id.* According to Appellant, he became angry, told his son to take his shower in preparation for going to bed, and left the room. *Id.*

¶ 11 To some extent, Appellant's tape-recorded comments concerning Pleasant Gap resembled his written ones. Commonwealth's Exhibit 9 at 7–10. However, rather than stating that his son touched his penis for two or three seconds, Appellant remarked that the son "was going after me." *Id.* at 9. Additionally, Appellant also appears to have indicated in his tape-recorded statement that his son put his mouth on Appellant's penis during the Pleasant Gap incident and that Appellant then stopped his son from doing so. *Id.* at 9–10.

¶ 12 Accordingly, based on the foregoing facts, Appellant's statements regarding Bellefonte #1 and Pleasant Gap were not confessions or admissions. Therefore, I would not demand the Commonwealth establish *corpus delicti* prior to the admission of these statements.

**2.** In an admission, a defendant admits a particular fact from which a factfinder can then infer the defendant's guilt while, in a confession, the defendant acknowledges guilt, particularly by admitting the essential aspect of the crime in question. *See* BLACK'S LAW DICTIONARY 317 (8th ed.2004). It has also been said that a confession acknowledges all facts necessary for a conviction while an admission acknowledges a fact tending to prove guilt but does not admit or acknowledge all essential elements of an offense. *See* BLACK'S LAW DICTIONARY 269 (5th ed.1979). I point out this distinction for the sake of clarity, but the difference between confessions and admissions is not central to my dissent.

¶ 13 Appellant's oral and written statements concerning Lezzer Lumber, while not entirely consistent with each other, generally described an episode where he and his son were in a restroom.[3] N.T., 02/01/05, at 186–87, 233, 246–47; Commonwealth's Exhibit 9 at 10–13; Commonwealth's Exhibit 10. According to Appellant, his penis was exposed as he had to urinate and his son was sitting on the toilet. N.T., 02/01/05, at 186–87, 233, 246–47; Commonwealth's Exhibit 9 at 10–13; Commonwealth's Exhibit 10. Appellant claimed he started to pick up his son, apparently to remove him from the toilet, and his son's mouth came to be on Appellant's penis. N.T., 02/01/05, at 186–87, 233, 247; Commonwealth's Exhibit 9 at 12; Commonwealth's Exhibit 10. His written statement of January 17, 2000, indicated that, at some point during the incident, Appellant "might have said, 'Suck my dick,' out of anger." N.T., 02/01/05, at 187; Commonwealth's Exhibit 10. His oral statement of January 24, 2000, similarly indicated he told his son to suck his penis. Commonwealth's Exhibit 9 at 14. It does not appear his oral statement of January 17, 2000, or his written one of January 26, 2000, included any mention of having told his son to perform oral sex.

¶ 14 Appellant's foregoing Lezzer Lumber statements in which he did not mention telling his son to suck his penis are not, at least when standing alone, confessions or admissions. Therefore, I would not require them to be subject to the rigors of the *corpus delicti* rule. However, I would regard his other statements concerning Lezzer Lumber as admissions because, regardless of Appellant's implication that he was angry and not serious about telling his son to suck his penis, he did in fact admit telling his son to do so.

Accordingly, the *corpus delicti* rule would apply to those admissions.

¶ 15 Of course, I fully recognize a factfinder might judge various parts of Appellant's statements, particularly his accounts of the Lezzer Lumber incident, to be contrived or otherwise incredible. His intended exculpation could thus backfire, leading a factfinder to view him as guilty. However, questions of credibility are always for the factfinder. *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super.2006). What I am concerned with at this juncture is how the statements should be characterized based on the actual words contained therein. Thus, at least on their face, the statements concerning Bellefonte # 1 and Pleasant Gap, credible or not, are not properly characterized as confessions or admissions. Appellant's Lezzer Lumber statements in which he told his son to perform oral sex were arguably admissions. His other Lezzer Lumber statements were neither confessions nor admissions.

¶ 16 As to the remaining incident (*i.e.*, Bellefonte # 2), Appellant's written statement indicated he grabbed his son's genitals. N.T., 02/01/05, at 245. The context of his remarks implies Appellant did so for punitive rather than sexual purposes. *Id.* His tape-recorded remarks were essentially the same as those he made in writing. Commonwealth's Exhibit 9 at 4–7. Thus, his statements concerning this incident seem to have been intended, once again, more as exculpatory statements than confessions or admissions. However, Appellant's Bellefonte # 2 statements admit a fact—specifically, that he was the one who intentionally touched the intimate parts of another person, *to wit*, his son. Proof that Appellant touched the intimate parts of another person was necessary, though not

---

**3.** Appellant does not challenge the introduction of his statements concerning Lezzer Lumber. Nevertheless, I believe it is helpful to clarify the nature of those statements.

sufficient, to establish indecent assault. *See* 18 Pa.C.S.A. §§ 3101, 3126. Based on this admitted fact, a factfinder might infer Appellant's purpose in grabbing his son was, in truth, sexual arousal or gratification rather than punishment. Having a purpose of sexual arousal or gratification is, of course, an essential element of indecent assault, *see* 18 Pa.C.S.A. §§ 3101, 3126, the sex charge Appellant apparently faced in the Bellefonte case.

¶ 17 In short, as to Bellefonte # 2, Appellant admitted that he intentionally touched his son's genitals while, with respect at least to Bellefonte # 1 and Pleasant Gap, Appellant claimed his son initiated improper contact with Appellant-contact which Appellant did not want and contact which he stopped. Accordingly, I regard Appellant's oral and written statements regarding Bellefonte # 2 as constituting admissions and therefore subject to the *corpus delicti* rule.

¶ 18 Before addressing the merits of Appellant's claims, a number of comments are in order concerning the Majority's footnote 1. In an effort to characterize Appellant's explanations concerning Bellefonte # 1 and Pleasant Gap as confessions or admissions, the Majority needs to call those explanations ridiculous or incomprehensible. Majority at n. 1. Through its choice of language, the Majority proves my point: the only way Appellant's aforesaid explanations can be viewed as confessions or admissions is to view them as unbelievable—that is, not believable as denials or exculpatory statements—and, because the denials or exculpatory explanations are so unbelievable, their ridiculous nature essentially backfires and makes Appellant look guilty. It may well be true that someone evaluating the credibility of Appellant's statements could judge them as not believable. I have already acknowledged this possibility. *See supra.* However, it is not

proper for the Superior Court to make credibility assessments, superimpose those credibility assessments on certain statements, decide the statements must be untrue, and then conclude that, because the Superior Court thinks a defendant was lying, the defendant's exculpatory statements must actually be confessions or admissions simply because they sound ridiculous to us. Our task at this juncture is to determine how Appellant's statements should be characterized based on their content, not on our own subjective evaluation of how believable or ridiculous his explanations seem to us.

¶ 19 I note also that in reaching its determination as to whether the Bellefonte # 1 statement and the Pleasant Gap statements were so ridiculous or incomprehensible that they should be regarded as inculpatory, the Majority compares the relative ages of Appellant and his son, thus making the point that it is unbelievable to think Appellant could not have prevented or could not have more quickly stopped the sexual contact initiated by the child. Someone judging the credibility or weight of Appellant's statements might or might not reach such a conclusion, but the Superior Court surely should not engage in such assessments.

¶ 20 While engaging in its analysis of the credibility of Appellant's statements, the Majority also remarks that Appellant's statements concerning Bellefonte # 1 "would have us believe that a 7–year–old child overpowered a 38–year–old man, and kept him subdued for 30 seconds while the child forcibly fondled the man's genitals." Majority at n. 1. It warrants noting that Appellant's statements make no such explicit claims about being overpowered, subdued and forcibly fondled. Rather, Appellant explained in his written statement that he and his son wrestled and, when they did so, Appellant would get on the

floor and his son would try to knock him over. N.T., 02/01/05, at 245. Thus, Appellant's statements do not involve a claim that he was overpowered, subdued and forcibly fondled by a child. Further, Appellant explained in his oral statement that "in a split second" his pants were pulled down by his son. *See* Commonwealth Exhibit 9 at 2. As such, Appellant described an event that began quickly, not one that involved a process of him being overpowered and then subdued. It is true that Appellant, when questioned by police during his oral statement, estimated his son fondled him for "about 30 seconds." *Id.* at 3. He also indicated in both the oral and written Bellefonte # 1 statements that he told his son to stop and/or stopped him. *Id.* at 2; N.T., 02/01/05, at 245. Once again, there may arise questions about the believability of Appellant's statements, but Appellant simply did not confess or admit to engaging in sexual activity with his son.

¶ 21 When considering Appellant's written and oral statements concerning Pleasant Gap, the Majority again compares Appellant's age (then roughly 43) with his son's age (then roughly 12). The Majority uses this comparison of ages when judging Appellant's explanations to be "incomprehensible." Majority at n. 1. This analysis is yet another example of the Majority assessing the credibility of Appellant's statements in an effort to characterize his statements were actually confessions or admissions even though their content did not qualify them as such.

¶ 22 A reader of the Majority's footnote 1 would gain the false impression that Appellant made a statement or statements in which he admitted that he permitted his son to fondle his (Appellant's) penis for thirty seconds. Appellant did not do so. Indeed, several times in footnote 1, the Majority wrongly states that Appellant admitted that he permitted his son to fondle

him. He did not. On this point, the Majority is addressing the oral statement relating to Bellefonte # 1 in which Appellant described an episode during which he and his son were wrestling. The relevant portion of that statement is as follows:

Appellant: ... [W]e were wrestling.... And it came to a point ... I would say "We're done wrestling now, It's time to move on, go to bed.... Uh, he got aggravated, nasty, I'm not sure exactly what happened but the next thing you know, in a split second, whether my, my pants was down. He pulled them down. Uh, and then would uh, uh, I guess you would say fumble, and I said, I pushed him away.

Officer: Fumbled or fondled?

Appellant: Fondled.

\*　　\*　　\*　　\*　　\*　　\*

Officer: He fondled your penis?

Appellant: Yes. I said,

Officer: Your penis or your whole genital area?

Appellant: The whole genital area.

Officer: Okay.

Appellant: The legs, the whole general area.

Officer: And your penis and your testicles?

Appellant: Right. And I said, "Stop" and pushed him away.

Officer: And do you know, how, how long did that go on for?

Appellant: Uh, the whole, wrestling and everything, maybe a minute.

Officer: How long did he fondle you for?

Appellant: I'm going to say about 30 seconds.

Officer: Okay.

Appellant: I was you know, get him away. Uh, at that point in time, I don't remember getting excited, I was frustrated because it happened.

Commonwealth's Exhibit 9 at 2–3.

¶ 23 Upon reading what Appellant actually said, it is plain that he did not state that he permitted his son to fondle him for thirty seconds. He was saying that his son initiated the contact. Appellant estimated the fondling lasted thirty seconds. What the Majority is doing is reading his statement and then deciding that it is incredible or incomprehensible that the episode could have lasted for thirty seconds unless Appellant permitted it. The point is that, on its face, Appellant's statement is not an admission or a confession to a crime. He did not say that he permitted his son to fondle him.

¶ 24 At the outset of its footnote, the Majority remarks that this Dissent "attempts to cast [A]ppellant's statements in regard to the Bellefonte incident as denials or exculpatory statements." Majority at n. 1. The situation is quite the contrary. As I have shown, while I am relying on the content of Appellant's statements, the Majority engages in a credibility analysis to cast Appellant's explanations as confessions or admissions. Because the content of his statements do not qualify them as confessions or admissions, the Majority assesses the believability of the statements, ascribes to those statements the status of

being ridiculous and then concludes those statements must be confessions or admissions based on the Majority's subjective evaluation of their inherent worth. Accordingly, virtually all of the Majority's analysis on this question stems from its own attempt to cast the statements as something they are not. In doing so, the Majority ultimately renders the admission of certain statements contingent upon the Commonwealth satisfying the *corpus delicti* rule when some of those statements should not be subject to thereto.[4]

¶ 25 I note also that, as to Appellant's statements concerning Bellefonte # 2, I have found them to be admissions.

¶ 26 With the foregoing facts in mind, I turn to Appellant's issues. He complains about the introduction of his statements concerning Bellefonte, an incident or incidents for which he was not tried. As I have mentioned, the remarks regarding Bellefonte # 2 are rightly viewed as admissions. Confessions and admissions are, by their nature, often "hasty and unguarded." *Commonwealth v. Otterson*, 947 A.2d 1239, 1249 (Pa.Super.2008). Because of these infirmities, confessions and admissions should not be admitted unless the *corpus delicti* of the confessed or admitted crime is proven by a preponderance of the evidence. *Id.* The purposes of the *corpus delicti* rule are to guard against the inherent infirmities of confessions and admissions and to protect against a conviction where there was no crime. *Id.* Phrased

---

4. The Majority apparently fails to recognize that, by characterizing Appellant's statements as inculpatory, the Majority makes admission of those statements more difficult, at least with respect to the *corpus delicti* rule. That is, the Majority puts the Commonwealth to the task of proving *corpus delicti* before Appellant's statements can be admitted whereas the Commonwealth should not be put to that task because the statements are not inculpatory. A defendant's non-inculpatory state-

ments, such as those made by Appellant here, can be admitted without making the Commonwealth prove *corpus*. *Verticelli*, 706 A.2d at 824; *Rivera*, 828 A.2d at 1104. I believe it is dangerous to set a precedent whereby this Court can impose its credibility assessments on a party's statements in order to make it more difficult for the adverse party (in this case the Commonwealth) to offer those statements into evidence.

positively, proving that the crime in question did in fact occur corroborates what would otherwise be an uncorroborated statement—a confession or admission—which on its own is not a dependable type of evidence. Thus, proof that the crime happened renders more reliable an item of evidence otherwise regarded as infirm.

¶ 27 Here, the Majority affirms the use of Appellant's arguable admissions to the Bellefonte # 2 incident to convict him of the Lezzer Lumber incident. The undeniable purpose of introducing the admissions was, of course, to secure a conviction for a crime. The fact that the crime on trial was not the one for which Appellant arguably made admissions did not render those admissions any more reliable and did not diminish the consequent danger that Appellant might be convicted for a crime that did not happen. Indeed, the admissions regarding the Bellefonte incident were as unreliable during the Lezzer trial as during the aborted Bellefonte prosecution. The admissions were never corroborated. Indeed, those admissions continue to be unreliable because they have never been rendered reliable by proof of the *corpus delicti* of the alleged Bellefonte crime. Having never been afforded some level of reliability by proof of *corpus delicti*, the admissions were nevertheless used against Appellant to secure a conviction for a different crime. Thus, inherently unreliable items of evidence—statements never qualified as admissible by proof of *corpus delicti*—were used as evidence of guilt, albeit for another crime. In this way, using the admissions concerning the Bellefonte incident in the trial of the Lezzer Lumber incident directly undermined the protection afforded by the *corpus delicti* rule.

¶ 28 In sum, the law of *corpus delicti* is a rule of evidence intended to qualify admissions and confessions as admissible. *Commonwealth v. Dupre*, 866 A.2d 1089, 1097 (Pa.Super.2005). Introducing the Bellefonte admissions without proof of the Bellefonte *corpus delicti* allowed infirm evidence to be used to obtain a conviction.

¶ 29 Having stated the foregoing, I acknowledge that, in *Commonwealth v. Edwards*, 588 Pa. 151, 903 A.2d 1139, 1158 (2006), the court found a confession to robbing a certain victim the night before his murder was admissible in the murder trial without proof of *corpus delicti* of the robbery. Contrary to the reasoning I have set forth *supra*, the court concluded the admission of the evidence did not violate the purpose of the *corpus delicti* because there was no danger that the defendant would be convicted of the robbery. Thus, while I understand the *Edwards* case appears to control the instant matter, the reasoning therein overlooks the hazard of using infirm evidence (*i.e.*, a confession or admission without proof of *corpus*) to convict a defendant. As such, I believe the Supreme Court might rightly choose to reconsider the *Edwards* holding.

¶ 30 As to Bellefonte # 1, Appellant indicated his son and he were playing on the floor when the son pulled down Appellant's sweatpants and, while Appellant's underwear was still on, tried to touch or did touch Appellant near his penis. N.T., 02/01/05, at 245; Commonwealth's Exhibit 9 at 2–4. According to Appellant, he stopped his son from doing so. N.T., 02/01/05, at 245; Commonwealth's Exhibit 9 at 2–4. Thus, Appellant's oral and written statements about Bellefonte # 1, at least based on their actual content, did not constitute admissions or confessions. Therefore, they were not subject to the *corpus delicti* rule. That is, the Commonwealth was not required to establish *corpus delicti* before having them admitted. *Verticelli*, 706 A.2d at 824; *Rivera*, 828 A.2d at 1104. Accordingly, unlike the Majority, I would not require the Common-

wealth to establish *corpus delicti* as to those statements.

¶ 31 Aside from the *corpus delicti* issues, however, the Bellefonte # 1 statements were used to inform the jury about a history of sexual contact between Appellant and his son. By its scandalous and repugnant nature, this type of evidence carried with it an undeniable tendency to inflame the triers of fact. Confronted with such testimony, jurors were likely to blame Appellant rather than his son for the history of improper contact despite Appellant's assertions that his son initiated that contact. Moreover, this evidence had weak, if any, probative value relevant to the Lezzer Lumber incident and served instead to bias the jurors against Appellant in a significant manner by associating him as much as possible with accounts of sexual contact with his son. Additionally, I do not believe any cautionary instruction concerning any purportedly legitimate use of this testimony could ameliorate the hazard of blackening Appellant's character in the jurors' eyes. As such, I would find the admission of Appellant's comments concerning Bellefonte # 1 created an insurmountable and improper problem of unfair prejudice to Appellant, a problem outweighing any legitimate probative value, if indeed there was any. *See* Pa.R.E. 403.

¶ 32 Moreover, when juxtaposed with Appellant's statements regarding Lezzer Lumber, his comments concerning Bellefonte # 1, while not themselves facially incriminating, take on an air of contrivance, thus leading a trier of fact to believe Appellant did in fact engage in sexual molestation, both at Bellefonte and at Lezzer Lumber. That is, the introduction of repeated references to sexual behavior, particularly scandalous behavior, almost inevitably leads jurors to believe the accused is somehow culpable. Even when the improper behavior is essentially denied

by the accused, the repeated need for denial itself becomes suspicious. This again is an example of how Appellant's statements concerning Bellefonte # 1 served to inflame the jurors, unfairly biasing them toward conviction not based on evidence concerning Lezzer Lumber but, rather, based on references to Bellefonte—an incident or incidents which the son could not recall and for which Appellant was not tried.

¶ 33 For the foregoing reasons, I would find it was an abuse of discretion to admit Appellant's statements concerning Bellefonte # 1. *See Commonwealth v. Hardy*, 918 A.2d 766, 776 (Pa.Super.2007) (discussing abuse of discretion in the admission of evidence); Pa.R.E. 403.

¶ 34 Additionally, I would exclude Appellant's statements concerning Bellefonte # 2 because those statements involved the same type of unfair prejudice and negligible probative value as did the statements regarding Bellefonte # 1.

¶ 35 With respect to Pleasant Gap, the challenged evidence included testimony from Appellant's son (the victim in the present case) as to the details of how he was sexually assaulted by Appellant at Pleasant Gap. *See* N.T., 02/01/05, at 71–81. More particularly, the son testified he performed oral sex on Appellant at Appellant's direction. Also with respect to Pleasant Gap, Appellant complains about the admission of his statements.

¶ 36 I would find it was an abuse of discretion to admit any evidence concerning Pleasant Gap. According to the son, the Pleasant Gap incident, like Lezzer Lumber, involved him performing oral sex on Appellant at Appellant's direction. Given the essential similarities between the Pleasant Gap and Lezzer Lumber testimony and the fact that the victim, or alleged victim, was the same person in both incidents, it is to my mind a virtual certainty

that the jury would conclude Appellant must have committed the improper acts at Pleasant Gap and therefore must have been guilty of the Lezzer charges. This type of reasoning is exactly what Pa.R.E. 404(b) is designed to prohibit.

¶ 37 The Pleasant Gap accusations proved virtually nothing about Lezzer Lumber and, even to the extent there was any legitimate probative value of the Pleasant Gap evidence, that value did not outweigh the potential for improper prejudice. *See* Pa.R.E. 404(b)(3) (setting forth balancing test for admission of other crimes, wrongs or acts). Additionally, given the evident tendency to inflame the jurors, I do not believe jury instructions did or could have insulated Appellant from unfair prejudice. Furthermore, I simply cannot countenance the introduction of this evidence in light of Appellant's acquittal.

¶ 38 Appellant's statements concerning Pleasant Gap, although essentially accounts of how the son initiated sexual contact and Appellant stopped that contact, carried with them the same dangers of unfair prejudice and the same lack of probative value as did Appellant's statements concerning Bellefonte. Therefore, I believe they should not have been admitted.

¶ 39 Accordingly, I would find that it was manifestly unreasonable for the trial court to admit any evidence relating to Pleasant Gap, that doing so was therefore an abuse of discretion, and that the admission of this evidence violated Pa.R.E. 403 and/or 404(b)(3).

¶ 40 In light of the foregoing discussion, I would vacate the judgment of sentence and remand for a new trial.