J-A07017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN PERALTA | : | |
| | : | |
| Appellant | : | No. 2627 EDA 2017 |

Appeal from the Judgment of Sentence March 6, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009438-2015

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 18, 2019**

Appellant, Jonathan Peralta, appeals from the March 6, 2017 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his conviction of First-Degree Murder, Persons Not to Possess Firearms, Carrying a Firearm Without a License, and Carrying a Firearm in Public in Philadelphia.[1]  He challenges the weight and sufficiency of evidence, and asserts that the trial court erred in the removing a juror and admitting certain testimony.  After careful review, we affirm.

We glean the following factual and procedural history from the certified record.

---

[1] 18 Pa.C.S. § 2502; 18 Pa.C.S. § 6105(a)(1); 18 Pa.C.S. § 6106(a)(1); and 18 Pa.C.S. § 6108, respectively.

---

*   Former Justice specially assigned to the Superior Court.

On May 15, 2015, Appellant entered Déjà Vu, a barber shop on Front Street in Philadelphia. He shook everyone's hands, asked for "somebody's" whereabouts, and then left the barber shop. Appellant then went to a Chinese take-out store on the same block. A few minutes later, Appellant exited the Chinese take-out store by Front and Dauphin Streets, walked toward Steven Justiniano ("decedent"), shot the decedent in the chest, and ran away. Several street surveillance cameras recorded the events leading up to the decedent's death.[2] The decedent was taken to Temple Hospital, and was pronounced dead at 7:30 PM. An autopsy report concluded that the cause of death was a gunshot wound to the chest.

Police arrested Appellant on June 24, 2015. A jury trial commenced on February 28, 2017, at which the Commonwealth presented videotape evidence as well as testimony from Angel Matos, a barber shop employee, Detective Thorsten Lucke, an expert in video recovery, and Dr. Albert Chu, a forensic pathologist. The jury found Appellant guilty of First-Degree Murder, Carrying a Firearm without a License, and Carrying a Firearm in Public in Philadelphia. On March 6, 2017, after a stipulated trial, the trial court found

_____

[2] The investigating police officers recovered videotape from several surveillance cameras in the area of the murder. The videotape shows Appellant walking in the neighborhood where the murder occurred, on Howard Street, on West Dauphin Street, and then entering a Chinese take-out store by Front and Dauphin Streets. Appellant later exited the Chinese take-out store, walked towards the decedent, and lunged toward the decedent. The video does not clearly show Appellant shooting decedent, but only Appellant lunging at decedent and then running back in the direction he originally came from, on West Dauphin Street and then Howard Street.

- 2 -

Appellant guilty of Persons Not to Possess Firearms. The court sentenced Appellant to life imprisonment without the possibility of parole.

Appellant filed a Post-Sentence Motion, which the trial court denied. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Where there was little evidence of the events preceding a shooting, except for a fleeting video of part of the incident demonstrating deficient and equivocal evidence of malice, and where there was no evidence of motive or threats toward the decedent, was the evidence insufficient to prove first degree murder?

2. Given the factors set forth above was the verdict against the weight of evidence, where the jury had insufficient evidence to make credibility determinations and judge whether the element of malice was proven?

3. Did the lower [c]ourt err in removing a juror during jury deliberations where the juror was acting conscientiously and diligently pursuing his duties as a juror? Did the lower [c]ourt err in not sharing with the litigants a letter the juror gave to the [c]ourt [c]rier, which it read before removing the juror?

4. Did the lower [c]ourt err when it permitted the Commonwealth to argue that the sole civilian witness was afraid to testify inferring that [Appellant], his family or associates had threatened him and then argued similarly in closing that the witness was afraid of Mr. Matos when there was no evidence to prove that?

Appellant's Br. at 3-4.

**Sufficiency of Evidence**

Appellant claims that the evidence is insufficient to prove First-Degree Murder because the evidence was "so speculative" regarding the critical element of malice. Appellant's Br. at 14-16. In support, Appellant relies on the Commonwealth's surveillance video evidence showing him backing-up before a shot was fired, and asserts that because he did not proceed straight toward the decedent and shoot him, there is no evidence of Appellant's ill-will, threat, or animosity towards the decedent. *Id.* at 14-22.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Hutchinson***, 164 A.3d 494, 497 (Pa. Super. 2017). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

First-Degree Murder is an "intentional killing," defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). To sustain a First-Degree Murder conviction "the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill." ***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015). A jury may infer malice and a specific intent to kill from the defendant's use of a deadly weapon on "a vital part of the decedent's body." ***Commonwealth v. Hicks***, 156 A.3d 1114, 1124 (Pa. 2013) (citation omitted). The chest is considered a vital part of the body. ***Commonwealth v. Hanible***, 836 A.2d 36, 39 (Pa. 2003).

In its well-reasoned Rule 1925(a) opinion, the trial court correctly found that the Commonwealth did not need to establish ill-will, threat, or animosity between Appellant and the decedent because it was reasonable for the jury to infer specific intent to kill from the use of a deadly weapon upon a vital part of the decedent's body. Trial Ct. Op., filed 4/19/18, at 3. Dr. Chu testified that he conducted an autopsy of the decedent and concluded that he died from a gunshot wound sustained on the left side of his chest. ***Id.*** at 4-5. We, thus, conclude that Appellant is not entitled to relief on this claim.

## Weight of Evidence

Appellant asserts that he is entitled to a new trial because the verdict shocks one's sense of justice. Appellant's Br. at 19. He argues the evidence

was insufficient to allow the jury to make credibility determinations regarding the element of malice.[3] *Id.* at 19-24. This claim warrants no relief.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46.

"In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of

---

[3] To the extent Appellant's argument pertains to the sufficiency of the evidence, we have found this claim without merit.

discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict, but questions the evidence that the jury chose to believe. ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

In denying Appellant's weight of evidence claim, the trial court found, *inter alia*, that it was not against the weight of evidence for the jury to place significant weight on the surveillance video compilation and the testimony of Detective Lucke and Dr. Chu to conclude that Appellant shot the decedent in the chest, which resulted in his death. ***Id.*** at 7-9.

Appellant's arguments are essentially a request that we reassess and reweigh the evidence presented at trial. We cannot and will not do so. Our review of the record indicates that the evidence supporting the jury verdict is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the court's conscience. We discern no abuse of discretion in the trial court's denial of Appellant's weight challenge.

**Dismissal of Juror**

Appellant contends that the trial court abused its discretion by dismissing Juror No. 12. Appellant's Br. at 25-33.

The decision to remove a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. ***Commonwealth v. Carter***, 643 A.2d 61, 70 (Pa. 1994). "This discretion exists even after the jury has been empaneled and the juror sworn." ***Id.*** The decision to remove a juror "must be based upon a sufficient record of competent evidence to sustain removal." ***Commonwealth v. Saxton***, 353 A.2d 434, 442 (Pa. 1976).

The trial court detailed three events that led to its discharge of Juror No. 12. First, on March 1, 2017, after the court informed the jury in its opening instructions not to speak directly to the judge, Juror No. 12, raised his hand and attempted to ask the judge a question, prompting the court to cut him off and remind him not to speak to her. Trial Ct. Op. at 14. Second, on March 1, 2017, the court officer informed the trial court that Juror No. 12 informed him of his opinion of the case; the trial court then questioned Juror No. 12 about his interaction with the court officer, and reminded him of the court's instructions not to discuss the case with the judge or court personnel. ***Id.*** Third, on March 3, 2017, as the jurors walked toward the jury room to continue deliberations, Juror No. 12 passed a letter, addressed to the trial judge, to a court officer. ***Id.*** at 15. After the third incident, the trial court determined

that Juror No. 12 was unfit to serve due to his failure to follow the court's instructions, and discharged Juror No. 12. ***Id.***

Appellant argues that there was insufficient evidence demonstrating Juror No. 12 could not be fair and impartial. Appellant's Br. at 25-33. He acknowledges that Juror No. 12 attempted to communicate with the trial judge and court officers, but describes the conduct as "*de minimis* infractions," claiming that Juror No. 12 was simply grappling with the evidence. ***Id.*** at 26, 30.

Juror No. 12's failure to heed the court's directions was not *de minimis*. The record demonstrates that Juror No. 12 refused to follow the trial court's instructions three times regarding communications with the trial judge and the court's officers. Therefore, we conclude that the trial court acted within its discretion in dismissing Juror No. 12.

Appellant also argues that it was improper for the trial court to have precluded the parties from reviewing Juror No. 12's March 3, 2017 letter because the letter would allow the parties to understand the trial court's decision to remove him. Appellant's Br. at 32-33. It was not the content of the letter, but Juror No. 12's refusal to follow the court's instruction three times that formed the basis for the trial court's dismissal of Juror 12. Trial Ct. Op. 14-15. Thus, the contents of the letter are irrelevant to the trial court's decision. Accordingly, Appellant is not entitled to relief on this claim.

**Witness Testimony**

In his last issue, Appellant raises two distinct sub-issues related to Matos's testimony: (1) that the trial court erred when it allowed the Commonwealth to elicit prejudicial testimony from its witness, Matos;[4] and (2) that the trial court erred by allowing the Commonwealth to include this prejudicial testimony in its closing argument. Appellant's Br. at 33-43.

Appellant's claims are related to Matos's testimony at trial. On direct examination, Matos testified that on May 15, 2015, while he was working at Déjà Vu, Appellant entered the shop, shook hands with people, asked for "somebody's" whereabouts, and then left. Trial Ct. Op. at 3. Three to four minutes later, Matos heard a loud bang. *Id.* Matos stated that he left Déjà Vu a couple minutes later and observed the decedent on the ground with a bullet wound. *Id.*

The prosecutor continued to examine Matos, and asked him why his trial testimony contradicted his statement made at Appellant's preliminary hearing, in which he stated that he had never seen Appellant before in his life. N.T., 2/28/17 at 171; *see* Trial Ct. Op. at 12. Appellant's counsel objected; the trial court overruled the objection. *Id.* at 171-72. Matos responded that his

---

[4] Although not stated in his Statement of Questions Involved, Appellant argues in his brief that the trial court erred in admitting certain testimony. Because Appellant raised this issue in his Rule 1925(b) Statement and the trial court analyzed the issue, we will address the issue.

- 10 -

testimony at trial was different because he was not currently inebriated and he no longer lives in Philadelphia. *Id.* at 172-75; *see* Trial Ct. Op. at 12.

Appellant first claims that Matos should have been precluded from testifying that he could now testify truthfully at trial because he no longer lived in Pennsylvania. Appellant's Br. at 33. Appellant argues that the testimony was prejudicial because it implied that Matos did not testify truthfully at the preliminary hearing due to his fear that if he testified against Appellant, Appellant or his associates would locate and harm him. *Id.* at 33-39. This argument has no merit.

The admissibility of evidence lies "within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion." *Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010).

To be admissible, evidence must be relevant. *See* Pa.R.E. 401, 402. However, relevant evidence may be excluded if the court determines that its probative value is outweighed by the risk of unfair prejudice. Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest [a] decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.*, cmt.

Here, the testimony of Matos at trial where he stated that he saw Appellant immediately before the shooting, but did not identify him at the preliminary hearing is relevant to the issue of whether it was Appellant who

shot decedent. The testimony about the reason that Matos changed his testimony is equally relevant to assist the jurors in determining whether Matos is testifying truthfully at trial or the preliminary hearing. Although this identification testimony can be prejudicial to Appellant, the trial court properly weighed the probative value against the prejudicial impact and admitted it.

Appellant also contends the trial erred in allowing the prosecutor to reference Matos's fears in his closing argument because the prosecutor improperly implied that Matos was afraid that Appellant or his associates are violent and would harm him if Matos testified against Appellant. Appellant's Br. at 39-43.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005) (citation and quotation marks omitted). In considering this claim, our attention is focused on whether the prosecutor's comments deprived the defendant of a fair trial, not a perfect one. *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citation omitted).

"Any challenge to a prosecutor's comment must be evaluated in the context and atmosphere of the entire trial." *Sanchez*, 82 A.3d at 981. It is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses. *Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (citation omitted). However, "it is entirely proper

for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." *Id.* Additionally, the prosecutor "may employ oratorical flair in arguing its version of the case to the jury," *Commonwealth v. Weiss*, 776 A.2d 958, 969 (Pa. 2001); and may "respond to defense arguments with logical force and vigor," *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009).

Here, the trial court opined that the prosecutor simply commented on the evidence, Matos's testimony, and any reasonable inferences arising from the evidence. Trial Ct. Op. at 12-13. Therefore, it did not err in allowing the prosecutor's comments

We agree with the trial court's conclusion. In his closing, Appellant's counsel questioned why the Commonwealth did not present testimony from a witness at the Chinese take-out restaurant. N.T., 3/1/17 at 132. The prosecutor responded, explaining that "[p]eople are scared." *Id.* at 168. The prosecutor then used Matos as an illustration of "someone who was scared," summarized Matos's testimony, and offered a reasonable inference of why Matos's testimony changed. The prosecutor explained that Matos did not want to implicate someone who lived near him of murder in fear of retaliation. Based on our review of the prosecutor's statements, and the argument Appellant's counsel made, we conclude that the trial court properly exercised

its discretion in overruling Appellant's objections. Accordingly, Appellant is not entitled to relief on this claim.

Finding no merit to Appellant's issues, we affirm his Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/19