J-S21011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN HOPSON, | |
| Appellant | No. 76 EDA 2015 |

Appeal from the Judgment of Sentence Entered January 21, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014793-2009

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 29, 2016**

Appellant, John Hopson, appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of 4 to 8 years' incarceration, imposed after a jury convicted him of robbery (18 Pa.C.S. § 3701(a)(1)(ii)), theft by unlawful taking (18 Pa.C.S. § 3921(a)), receiving stolen property (RSP) (18 Pa.C.S. § 3925(a)), and terroristic threats (18 Pa.C.S. § 2701(a)(1)).  After careful review, we affirm.

The trial court summarized the evidence presented at Appellant's trial, which commenced on November 30, 2010, as follows:

> The Commonwealth presented several witnesses during Appellant's three-day trial, including Vanessa Montijo ("Ms. Montijo"), Rainer Young ("Mr. Young"), Eddie Almodovar ("Mr.

---

[*] Former Justice specially assigned to the Superior Court.

Almodovar"), and Philadelphia Police Detective Joseph Garvin ("Detective Garvin").

Ms. Montijo testified that on January 26, 2009, she was a bank teller at an M&T Bank located at 7121 Frankford Avenue, in the city and county of Philadelphia, Pennsylvania. Around 11:35 a.m., a male "dressed in black from head to toe" approached Ms. Montijo's teller window and handed her a note stating: "This is not a joke. You have 30 seconds to empty your drawers. No funny stuff or I will hurt you. Take me serious." (N.T., 11/30/10, pp. 13-20).[1]

[1] The Commonwealth submitted the note into evidence as Exhibit "C-3."

Ms. Montijo immediately filled a bag with money, while the male ordered her to "hurry up" and threatened to "hurt" and "kill" her if he was "caught." Ms. Montijo felt "threatened" and "scared" by the male's remarks and complied with his demands in order "to keep [her] and … [her] coworkers safe." After the male left the bank with $20,644.00, Ms. Montijo advised the bank's head teller of the robbery and pressed the security alarm. The bank's surveillance cameras had photographed the robber, who was wearing a black coat, black hat, black gloves, and dark sunglasses. (N.T., 11/30/10, pp. 17-24; and Exhibit "C-4").

Mr. Young testified that he had known Appellant "from the neighborhood" for approximately three (3) years, and that he and Appellant were incarcerated together at Bucks County Correctional Facility in May 2009. While incarcerated, Appellant advised Mr. Young of "a few bank robberies that he had gotten away with," including the robbery of M&T Bank. According to Mr. Young, Appellant described how he saw one of the bank's surveillance photographs in the newspaper and "was kind of laughing," as the photograph obviously was of Appellant "but nobody seemed to notice." Mr. Young likewise had seen Appellant's newspaper photo and contacted the legal authorities after Appellant described the robbery in several jailhouse conversations.[2] In June 2009, Mr. Young gave a "statement" about these conversations to Detective Garvin and Special Agent for the Federal Bureau of Investigation (FBI), Todd Berry. (N.T., 11/30/10, pp. 36-56).[3]

[2] Mr. Young testified that the man in the bank's surveillance photographs is Appellant. (N.T., 11/30/10, pp. 36-40).

- 2 -

[3] At the time of trial, Mr. Young had a criminal history that included a theft conviction in 2001 and a guilty plea to theft charges in 2004. Mr. Young also admitted that he used several aliases in the past. In his transcription of Mr. Young's statement, which the Commonwealth introduced as Exhibit "C-5C," Detective Garvin indicated that Mr. Young contacted the authorities because he sought to obtain an early release from incarceration so that his child would not be placed in foster care. Although Mr. Young testified at trial that he was concerned about his child['s] being placed in foster care, he claimed that the Commonwealth neither offered nor bestowed him any favorable treatment in exchange for his statement and testimony. (N.T., 11/30/10, pp. 43-56).

Mr. Almodovar testified that in the Spring or Summer of 2009, while [he was] in custody and awaiting sentenc[ing] on robbery charges, he contacted Detective Garvin and Agent Berry and advised that an individual approached him to buy drugs in January or February of 2009. The individual showed Mr. Almodovar a bag of money and advised that he robbed the M&T Bank on Frankford Avenue. Around the time of this encounter, Mr. Almodovar saw the newspaper photo of the robbery suspect and "thought" the individual that approached him was the same person from the photo. (N.T., 12/1/10, pp. 4-20).[4]

[4] At the time of trial, Mr. Almodovar was serving a fifteen (15) to thirty (30) year[] sentence on robbery-related charges. Mr. Almodovar testified that before being sentenced on these charges, he spoke to Detective Garvin and Agent Berry about Appellant and several other individuals, hoping that his cooperation would favorably affect his sentence. (N.T., 12/1/10, pp. 13-20).

Detective Garvin testified that he investigated the robbery and provided the bank's surveillance photographs to the Philadelphia Daily News. After the newspaper published one of the photos, Detective Garvin was contacted by Messrs. Almodovar and Young, whom the detective interviewed, respectively, in March 2009 and June 2009. Detective Garvin testified that Messrs. Almodovar and Young gave statements advising that an individual named John Hopson separately approached each of them, at different times and different places, and admitted to robbing the M&T Bank. To confirm that Messrs. Almodovar and Young were speaking of the same person, the

detective showed them photographs of Appellant that the Commonwealth subsequently introduced at trial as Exhibits "C-9" and "C-10." During their respective interviews, Mr. Almodovar wrote on Exhibit "10" that the photographed individual is the "person who was bragging about [r]obbing the bank," and Mr. Young wrote on Exhibit "C-9" that the photographed individual is the "person who admitted" robbing the bank. (N.T., 12/01/10, pp. 20-44; and Exhibits "C-9" and "C-10").[5]

> [5] This [c]ourt admitted the police photographs over the objections of defense counsel. (N.T., 12/01/10, pp. 25-27, 29-30, 43-50).

Trial Court Opinion (TCO), 6/1/15, at 2-4 (emphasis omitted).

Based on this evidence, the jury convicted Appellant of the above-stated offenses. On January 21, 2011, he was sentenced to an aggregate term of 4 to 8 years' incarceration. Appellant did not file a post-sentence motion or a direct appeal. However, on May 2, 2011, he filed a timely, *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Counsel was appointed and filed an amended petition on Appellant's behalf, seeking, *inter alia*, the restoration of his direct appeal rights. After conducting a hearing, the PCRA court granted Appellant's petition, thus reinstating his right to file this direct appeal *nunc pro tunc*.[1] Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents the following issues for our review:

_____

[1] The court's order stated that all other claims presented in Appellant's PCRA petition were deemed withdrawn, without prejudice to his right to raise those claims following our disposition of Appellant's direct appeal. **See** Trial Court Order, 1/7/15.

1. Whether the evidence was sufficient to prove [Appellant] guilty of the following charges: Robbery § 3701; Theft § 3921; RSP § 3925; and Terroristic Threats § 2706 where the court improperly admitted evidence through the testimony of the detective when the witnesses did not adopt the written statements and where the testimony given by the detective was not elicited from or presented by the witnesses?

2. Whether the verdict was against the weight of the evidence where improperly admitted evidence was utilized by the jury to reach a verdict that shocks one sense of justice?

3. Whether the trial court erred by permitting a witness to identify [] Appellant as the person depicted in the photo when said witness was not an eye witness to the act depicted in the photo and where his conclusion that Appellant was the person in the photo should have been determined by the jury?

4. Whether the trial court erred by admitting hearsay testimony of Detective Garvin who testified about information he received from Young when Young did not testify regarding notations on the back of C9 and information the detective received from an anonymous tip that provided Appellant's name?

5. Whether trial counsel was ineffective for failing to: investigate an alibi witness; consult with the client for trial preparation, to investigate Commonwealth witnesses for trial; … object to admission of C9 and C10; object to the detective's reading of writing on the back of a photo that had not been testified to by the witness; move the court for a curative instruction when [] Young was permitted to testify regarding other bank robberies relating to Appellant; object to the Commonwealth['s] question to the detective of whether [] Appellant gave a statement to police; and file a post[-]sentence motion?

Appellant's Brief at 8-10.

Appellant first challenges the sufficiency of the evidence to sustain his convictions of robbery, theft, RSP, and terroristic threats.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d

133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Initially, in Appellant's Rule 1925(b) statement, he did not specify which element(s) of the above-offenses the Commonwealth failed to prove; instead, he baldly claimed that, "the evidence was insufficient to prove [Appellant] guilty of the following charges: Robbery § 3701; Theft § 3921; RSP § 3925; and Terroristic Threats § 2706." Pa.R.A.P. 1925(b) Statement, 2/12/15, at 1. Additionally, in his brief to this Court, Appellant offers no discussion of how the Commonwealth's evidence was insufficient to prove any specific element(s) of the various crimes for which he was convicted. As such, we conclude that Appellant's boilerplate presentation of his sufficiency challenge in his Rule 1925(b) statement, and his underdeveloped argument on appeal, waives his sufficiency of the evidence issue for our review. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding the appellant's sufficiency claim waived where his argument was underdeveloped, he did not "set forth the elements of the crimes he was convicted" or "which specific elements were not met[,]" and he failed in his Rule 1925(b) statement to "'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal") (citations omitted).

Nevertheless, even had Appellant preserved his sufficiency claim, we would deem it meritless. Appellant's entire sufficiency argument centers on challenging the court's admission of certain evidence. While Appellant does not explicitly state as much, he suggests that this Court should assess only the *properly* admitted evidence, and conclude that it was inadequate to sustain his convictions.

To do so would be contrary to our standard of review. In analyzing the sufficiency of the evidence, we evaluate *all of* the evidence that was presented to the fact-finder during the trial, "without consideration as to the admissibility of that evidence." ***Commonwealth v. Smith***, 568 A.2d 600, 602-603 (Pa. 1989).

> The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

***Id.*** at 603 (internal citations omitted); ***see also Koch***, 1001 ("[I]n conducting our analysis [of the sufficiency of the evidence], we consider all of the evidence actually admitted at trial and do not review a diminished record."). Accordingly, even if preserved, we would conclude that Appellant's challenge to the sufficiency of the evidence is meritless.

In Appellant's second issue, he argues that the jury's verdict was contrary to the weight of the evidence. To properly preserve a challenge to the weight of the evidence, that claim must be raised before the trial court. ***See*** Pa.R.Crim.P. 607(A). Appellant did not file a post-sentence motion

raising this issue, and he fails to point to where in the record he preserved this claim prior to sentencing. Pa.R.A.P. 2119(e) (directing that the appellant must set forth in the argument portion of his brief where in the record he preserved the issue before the trial court). Accordingly, Appellant's challenge to the weight of the evidence is also waived.

Next, Appellant briefly argues that the trial court erred by allowing Rainer Young to identify Appellant as the person seen in a photograph taken by a security camera in the bank, where Young was "neither associated with the commission of the crime nor a witness to the crime…." Appellant's Brief at 19. Appellant contends that permitting Young's identification "usurped the province of the jury[,]" which is tasked with "disposing issues of fact in criminal cases." *Id.* at 18 (quoting **Commonwealth v. Sanchez**, 36 A.3d 24, 55 (Pa. 2011)).

Again, we are constrained to deem Appellant's claim waived. The only issue presented in his Rule 1925(b) statement that could be viewed as including the above-stated argument is the following: "The trial court erred by permitting a witness to identify [Appellant] in a video when said witness was not an eyewitness to the act depicted in the video[.]" Pa.R.A.P. 1925(b) Statement, 2/12/15, at 2. In its opinion, the trial court declined to address this issue, explaining:

> There was no "video" introduced at trial and, therefore, Appellant's appeal on this ground is incomprehensible. Beyond that, since every witness that testified was shown *photographs* from the bank's surveillance camera, Appellant's bland reference to "said witness" is inexcusably vague and any appeal on this

> ground is waived. ***Commonwealth v. Cannon***, 954 A.2d 1222, 1228 (Pa. Super. 2008) ("Where an appellant fails to identify the issues sought to be pursued on appeal in a concise manner, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. … Essentially, when the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review.").

TCO at 14 (emphasis in original).

We agree with the trial court that Appellant's reference to a video, rather than a photograph, and his using "said witness" rather than identifying Young by name, render his Rule 1925(b) statement inexcusably vague. ***See also*** Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). This is especially true where *both* Young and Almodovar were shown a picture taken from the bank's surveillance camera, over defense counsel's objections, and were asked questions regarding the identity of the person in the photograph. ***See*** N.T. Trial, 11/30/10, at 40-41; N.T. Trial, 12/1/10, at 9-11. We also stress that even if the court were able to identify Appellant's claim as pertaining to Young's testimony, Appellant's Rule 1925(b) statement only explains that this evidence should not have been admitted because Young *was not an eyewitness*; at no point did Appellant allude to his argument, herein, that Young's testimony 'usurped the province of the jury.' Accordingly, we agree with the court that Appellant's third issue is waived.

In any event, even if Appellant had preserved his claim that it was improper to admit Young's testimony that Appellant was the person in the photograph, we would deem his argument meritless.

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. ***Commonwealth v. Hunzer***, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. ***Id.***

***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

Here, the Commonwealth argues, and we agree, that Young's statement that Appellant was the person in the photograph constituted admissible opinion testimony. The applicable version of Pennsylvania Rule of Evidence 701, addressing opinion testimony by a lay witness, provides, in pertinent part:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*See* Pa.R.E. 701.[2]

In this case, Young's challenged testimony satisfies the requirements of Rule 701. First, Young's opinion that Appellant was the individual in the photograph was based upon his own perception. Specifically, Young testified that he recognized Appellant in the picture because he had known Appellant for three years, and had interacted with Appellant when they lived in the same neighborhood. *See* N.T. Trial, 11/30/10, at 40-41. Second, a fact that was in issue at trial was whether Appellant was the person depicted in the photograph taken during the bank robbery. Thus, Young's opinion that Appellant was the person seen in the photograph was helpful to determining this fact. Third, Young's opinion was not based on any specialized or technical knowledge that would fall within the scope of Rule 702, pertaining to expert testimony. Accordingly, even if properly preserved, we would find no merit in Appellant's challenge to the admission of Young's opinion testimony that Appellant was the person in the photograph from the bank's surveillance camera.

In Appellant's next issue, he argues that the trial court erred by admitting hearsay testimony by Detective Garvin. Appellant's confusing

---

[2] Effective March 18, 2013, our Supreme Court rescinded and replaced this rule of evidence. *See* Pa.R.E. 701, Comment. Appellant's trial preceded the effective date of the revised rule and, thus, we apply the former version of Rule 701 herein.

argument in support of this claim seemingly identifies two portions of purported hearsay testimony by the detective, which we will address in turn.

First, Appellant takes issue with the fact that Detective Garvin was "permitted to testify at trial regarding a notation on the back of [Commonwealth's Exhibit] C9…." Appellant's Brief at 21. That exhibit was a copy of a photograph that was shown to Ranier Young by the detective during his interview of Young. Appellant specifically challenges testimony by the detective during which the Commonwealth showed him the photograph and asked him if he could read the writing on back of it. **See id.** (citing N.T. Trial, 12/1/10, at 26). Detective Garvin read the notation, which stated: "This is the person who admitted doing the bank robberies at the M&T Banks, Aramingo and Mayfair branches." **Id.** at 26-27. The detective testified that the notation was signed by Rainer Young, and that he was present when Young wrote the statement and signed it. **Id.** at 27. Appellant argues that because "no testimony regarding the notation had been provided by Young[,]" the detective's testimony about what Young wrote on the photograph was inadmissible hearsay. Appellant's Brief at 21.

In Appellant's Rule 1925(b) statement, he presented this issue as follows: "The trial court erred by admitting the testimony of Detective Garvin who testified regarding hearsay statements by **Mr. Almodovar**, photos shown to **Mr. Almodovar** and his responses, and the admission of testimony regarding an anonymous tip[.]" Pa.R.A.P. 1925(b) Statement, 2/12/15, at 2 (emphasis added). Appellant did not specifically challenge the

testimony by Detective Garvin about **Young's** written notation on the photograph and, thus, the trial court did not address this claim in its opinion. Accordingly, Appellant waived his challenge to Detective Garvin's testimony pertaining to Young's written notation on the back of the photograph. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Appellant also argues that the court erred by allowing Detective Garvin "to testify, over objection, that he received Appellant's name from an anonymous tip, when the tipster did not testify at trial." Appellant's Brief at 21 (citing N.T. Trial, 12/1/10, at 30-31). While we deem this claim preserved, despite that Appellant did not specifically point to *what* testimony he was challenging in his Rule 1925(b) statement, we conclude that the court did not abuse its discretion in admitting this evidence. In the specific portion of the record cited by Appellant in his brief, Detective Garvin provided the following testimony regarding an anonymous tip:

> [The Commonwealth:] And, detective, based on your interviews with Eddie Almodovar and Rainer Young, did you speak to anyone else involving this investigation?
>
> [Detective Garvin:] Yes, ma'am. I received a telephone tip from a source --
>
> [Defense Counsel:] Objection, Your Honor, to hearsay.
>
> THE COURT: Without saying what this tipster said, just tell us what you did, please.
>
> …

[Detective Garvin]: Based on the information I received, I was led to believe that --

[Defense Counsel]: Objection.

THE COURT: Just tell us what you did, detective

[Detective Garvin]: I put that information on the affidavit of probable cause.

N.T. Trial, 12/1/10, at 30-31.

While Appellant baldly states that this testimony constituted inadmissible hearsay, he provides no further discussion, nor any legal authority, to support that assertion. Hearsay is defined as "a statement that … the declarant does not make while testifying at the current trial or hearing[,]" that is "offer[ed] in evidence to prove the truth of the matter asserted in that statement." Pa.R.E. 801(c). Detective Garvin did not state what the anonymous caller told him; instead, he simply explained that he received information from a caller that he put into the affidavit of probable cause. The jury was never explicitly apprised of what that information included. Moreover, even if the jury could have *inferred* from the detective's testimony that the caller identified Appellant as the bank robber, Appellant does not provide any legal authority to support that raising such an inference, alone, turns the detective's non-hearsay testimony into inadmissible evidence. Accordingly, Appellant has not demonstrated that the trial court abused its discretion by admitting Detective Garvin's testimony regarding the anonymous caller.

- 14 -

In Appellant's final issue, he raises eight claims of trial counsel ineffectiveness. We decline to review these claims on direct appeal. In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed its prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the PCRA. **Holmes**, 79 A.3d at 576. The specific circumstances under which ineffectiveness claims may be addressed on direct appeal are not present in this case. **See id.** at 577-78 (holding that the trial court may address claim(s) of ineffectiveness where they are "both meritorious and apparent from the record so that immediate consideration and relief is warranted," or where the appellant's request for review of "prolix" ineffectiveness claims is "accompanied by a knowing, voluntary, and express waiver of PCRA review"). Accordingly, Appellant must wait to present these claims on collateral review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2016

- 15 -