J-S49018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM FLEMING HOLLOWAY | |
| Appellant | No. 1688 MDA 2017 |

Appeal from the Judgment of Sentence Entered June 15, 2017
In the Court of Common Pleas of Huntingdon County
Criminal Division at No: CP-31-CR-0000522-2017

BEFORE: SHOGAN, STABILE, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:      **FILED: DECEMBER 31, 2018**

Appellant, William Fleming Holloway, appeals from the June 15, 2017 judgment of sentence imposing 2½ to 11 years of incarceration for aggravated assault, recklessly endangering another person ("REAP"), terroristic threats,[1] and related offenses, including reckless driving. We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> 1. Anna Knighton (Victim) and [Appellant] were engaged in a romantic relationship and frequently argued. The relationship was tumultuous and at times became physical.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 2705, and 2706, and 75 Pa.C.S.A. § 3736, respectively.

2. On November 6, 2015, Victim was preparing to leave her home for her 3:00 p.m. scheduled work shift.

3. Victim's efforts to leave her home were impeded by [Appellant] as he confiscated her cell phone, dangled the phone over her head in a taunting manner, and blocked her path out of the house. Despite her pleading, [Appellant] would not return Victim's cell phone to her.

4. During the argument on November 6, 2015, [Appellant] stated, 'Don't call the police. If you call the police, bad things will happen even if I'm not here.'

5. Victim eventually took [Appellant's] glasses from his face in order to exchange them for her cell phone.

6. After taking [Appellant's] glasses, Victim was able to run outside to her vehicle, get in the vehicle, and lock the doors before [Appellant] could catch her.

7. The Victim slightly lowered the window to create a space for [Appellant] to pass her cell phone, which he eventually did.

8. Victim handed [Appellant] his glasses then proceeded to shift her car into reverse and back out of the driveway.

9. As she was backing down the driveway, Victim saw [Appellant] make a hand gesture, which she interpreted as lighting a fire. This action made her believe he was going to burn down her house.

10. While driving on her usual route to work, she stopped at an intersection. In her rear-view mirror, she saw [Appellant's] red Subaru approaching from the rear.

11. [Appellant] was driving at a fast rate of speed and caught up to the Victim's vehicle.

12. [Appellant] caused the front bumper of his vehicle to collide with the back bumper of the Victim's vehicle.

13. After the rear-end collision, [Appellant] caused his vehicle to pass Victim's vehicle on a curve in the road.

14. Upon turning the curve in the road, Victim found [Appellant's] car, 'In the middle of the road straddling the yellow lines, stopped, just stopped.'

15. Although Victim braked and attempted to stop, her car rear-ended [Appellant's] vehicle before coming to a complete stop.

16. The Victim called 9-1-1 and remained in her car until police arrived at the scene.

17. Victim was extremely upset when police arrived; she was inconsolable and became ill on the side of the road while speaking with a trooper.

Trial Court Opinion, 1/2/18, at 2-3.

After trial, a jury found Appellant guilty of the aforementioned offenses.

On June 15, 2017, the trial court imposed sentence as set forth above. This timely appeal followed. Appellant presents eight questions for our review:

1. Whether the trial court erred when it failed to instruct the jury in the elements of the summary offense of reckless driving where said summary is a lesser-included offense of recklessly endangering another person?

2. Whether a conviction for terroristic threats can be sustained where the alleged victim testified to acts that did not rise above the level of spur-of-the-moment threats made in the heat of anger?

3. Whether the evidence produced at trial was insufficient to sustain the verdict where the Commonwealth failed to establish [Appellant] committed the offense of terroristic threats by communicating, directly or indirectly, a threat to commit a crime of violence?

4. Whether a conviction for aggravated assault can be sustained where the alleged victim testified to having no injuries and that the contact between the vehicles was 'a tap, like a bump.'

5. Whether the evidence produced at trial was insufficient to sustain the verdict where the Commonwealth failed to establish

- 3 -

[Appellant] committed the offense of aggravated assault by intentionally or knowingly []attempting to cause bodily injury?

6. Whether a conviction for recklessly endangering another person can be sustained where the actions of [Appellant] did not rise to the level of reckless conduct?

7. Whether the evidence produced at trial was insufficient to sustain the verdict where the Commonwealth failed to establish [Appellant] committed the offense of recklessly endangering another person by engaging in reckless conduct which placed or may have placed another in danger of death or serious bodily injury, by intentionally ramming his car into the victim's car, causing a crash and hazardous condition?

8. Whether the trial court erred when it denied [Appellant's] attempt to call a key witness, to wit: Sandra Freeman, who would have testified to information relevant to the character and truthfulness of the Commonwealth's witness, the alleged victim?

Appellant's Brief at 8-10 (reordered; some capitalization omitted).

Appellant's first question challenges the trial court's jury instruction. He claims the trial court should have instructed the jury on reckless driving,[2] which, according to Appellant, is a lesser-included offense of recklessly endangering another person.[3] "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an

---

[2] The Motor Vehicle Code provides that "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S.A. § 3736.

[3] The Crimes Code provides that "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

error of law." ***Commonwealth v. Baker***, 24 A.3d 1006, 1022 (Pa. Super. 2011), ***affirmed***, 78 A.3d 1044 (Pa. 2013). "[U]nder Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." ***Commonwealth v. Pressley***, 887 A.2d 220, 225 (Pa. 2005).

Appellant has failed to note any place in the record where he preserved his request for a jury charge on reckless driving. During the trial court's jury charge, Appellant (who represented himself at trial) interrupted the court to ask about a jury charge for four unspecified summary offenses. N.T. Trial, 3/17/17, at 13-14. The trial court informed Appellant that the court, not the jury, would decide the summary offenses. Appellant never specifically asked the trial court to charge the jury on reckless driving as a lesser included offense of REAP.

Even if we assume Appellant's interruption of the trial court's jury charge was sufficient to preserve this issue for appeal, Appellant's argument fails. The only support he offers for his assertion that reckless driving is a lesser-included offense of REAP is ***Commonwealth v. Wood***, 475 A.2d 834 (Pa. Super. 1984), in which this Court held that reckless driving was a lesser-included offense of REAP as to the *mens rea* element:

> The *mens rea* required for recklessly endangering is recklessness-described in 18 Pa.C.S.A. § 302(b)(3) as 'conscious disregard' of a substantial and unjustifiable risk, whereas the *mens rea* for reckless driving is 'careless disregard.' We believe this distinction between 'conscious' and 'careless' connotes a definite difference in the intent requirement, with a lesser intent required to establish reckless driving. Therefore, with respect to *mens rea,* reckless driving is a lesser included offense of recklessly endangering.

*Id.* at 836−37. **Wood** is inapposite because it construes § 3714 of the Motor Vehicle Code. That section was titled "Reckless driving" when **Wood** was decided, but it has since been amended and is now titled "Careless driving." Current § 3714 provides that "[a]ny person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714. While Appellant was also charged and found guilty under § 3714, his jury instruction challenge relates to reckless driving under § 3736, which provides that a person commits the offense of reckless driving where he drives with "willful or wanton disregard for the safety of persons or property." 75 Pa.C.S.A. § 3736. Appellant wholly fails to address why § 3736 is a lesser-included offense of REAP, and therefore he cannot obtain relief on this issue.

With his second and third questions presented, Appellant claims the Commonwealth produced insufficient evidence to procure a conviction for terroristic threats. The Crimes Code provides, in relevant part, that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [. . . ] commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). Appellant

claims the evidence was insufficient because his statements to the victim were

"spur-of-the-moment threats made in the heat of anger" and because he did

not directly or indirectly threaten to commit a crime of violence.  Appellant's

Brief at 8-9.

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.  Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt.  The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

**Commonwealth v. Slocum**, 86 A.3d 272, 275–76 (Pa. Super. 2014).

As noted above, Appellant told the victim bad things would happen to

her if she called the police.  Appellant also made a gesture—he appeared to

be pretending to light a lighter—that the victim perceived as a threat to burn down her house. N.T. 3/17/17, at 32. Appellant does not dispute these facts. Rather, he claims his threats were not terroristic threats under § 2706 because they were spur of the moment and occurred while he was angry.

Appellant relies on **Commonwealth v. Sullivan**, 409 A.2d 888 (Pa. Super. 1979), in which this Court noted that the Pennsylvania Joint State Government Commission comment provides that § 2706 is not intended to "penalize mere spur-of-the-moment threats which result from anger." **Id.** at 889. Likewise, we quoted the Model Penal Code official comment, which states in part that "[i]n drafting legislation penalizing threats, we would not wish to authorize grave sanctions against the kind of verbal threat which expresses transitory anger rather than settled purpose to carry out the threat or to terrorize the other person." **Id.** In **Sullivan**, we vacated the defendant's convictions on two counts, one of which was based on a phone call to police during which defendant threatened to kill an officer. **Id.** at 888. The testifying officer admitted the defendant was very angry and not rational during the conversation. **Id.** at 888-89. The other was based on a heated face-to-face exchange between the defendant and a police officer the following morning. **Id.** at 889.

Appellant also relies on **Commonwealth v. Kidd**, 442 A.2d 826 (Pa. Super. 1982), where this Court found insufficient evidence of the defendant's intent to terrorize. The defendant, while handcuffed and receiving treatment

at a hospital, shouted obscenities at the arresting police officers and threatened to "machine gun" them. *Id.* at 827. We noted that the defendant was inebriated and agitated, and that his conduct evidenced no settled purpose to carry out his threat. *Id.*

We conclude that *Sullivan* and *Kidd* are inapposite because the threats presently at issue occurred during a sustained encounter between Appellant and the victim during which Appellant committed multiple crimes. Appellant began by preventing the victim from leaving her home, then he pursued her, bumped her car with his, then passed her and stopped his car—straddling the double yellow line—on a windy country road knowing she was behind him. Viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, we conclude that Appellant communicated threats to the victim with a settled purpose to carry them out. Appellant's argument fails.

In his fourth and fifth arguments, Appellant claims the Commonwealth produced insufficient evidence to sustain his conviction for aggravated assault. The Crimes Code provides, in relevant part, that a person commits aggravated assault if he "attempts to cause serious bodily injury to another[.]" 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, Appellant's vehicle approached the victim's vehicle from behind, bumped her, and passed her while the two were proceeding along a windy, narrow, two-lane road set off by guardrails on one side and woods on the other. N.T. Trial, 3/17/17, at 33. Once ahead of her, Appellant stopped his car straddling the double yellow line.

The victim testified as follows:

> Q. What happened after he came up behind you?
>
> A. All of a sudden I feel a tap, like a bump, a tap, whatever you want to say, on my car. And I looked over, and there he was beside me. He looked at me while we were driving. We were both going pretty fast. He went out around me. I felt it enough to know that he hit me and made some impact. And he went out around me, and I went around the curve. He went around the curve. I couldn't even think. And the next thing I know there is his car just right in the middle of the road straddling the yellow lines, stopped, just stopped.
>
> Q. What happened then?
>
> A. I remember thinking oh God, I'm trapped because I kind of was going to try to go around, but I knew I couldn't. I thought oh God, I'm trapped. And I hit him.
>
> Q. Back to when he was beside you, you said you felt something?
>
> A. Yes.
>
> Q. How hard was the impact?
>
> A. It wasn't like terribly hard, but it was enough that had I not been holding pretty tight to the steering wheel, it may have run me off the road.
>
> Q. That would have been into the embankment?
>
> A. Oh yeah.

Q. When he was in the middle of the road, what happened with your car? What did you do?

A. I just hit him.

Q. Where was your car? Did you stop your car at that point?

A. I wasn't even thinking of stopping. I was thinking get around him and go because he just stopped.

Q. What did you do then? Where did you go? What did you do?

A. What do you mean?

Q. After his car was stopped, did you go anywhere or did you stay in your car stopped

A. After the car made impact, I stayed in my car.

Q. What did you do at that point?

A. I called 9-1-1.

N.T. Trial, 3/17/17, at 35-37. A testifying police officer confirmed that the condition of the vehicles supported the victim's account. *Id.* at 159-161. The victim's vehicle was damaged but she did not sustain serious bodily injury. Thus, the question before us is whether Appellant attempted to inflict serious bodily injury.

Appellant's Brief contains a single paragraph of argument devoted to this issue, and he does not develop any legal argument regarding an attempt to inflict serious bodily injury. Appellant's Brief at 24. This results in waiver. Pa.R.A.P. 2119(b). In any event, the argument lacks merit. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward

perpetrating a serious bodily injury upon another." ***Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa. Super. 2005), ***appeal denied***, 879 A.2d 781 (Pa. 2005). In ***Gray***, the defendant stabbed the victim in the forearm with a knife and in the scalp with a screwdriver. ***Id.*** at 568. We held that the fact-finder could find an attempt to inflict serious bodily injury based on "the infliction of multiple stab wounds, including a wound above the eye and a wound to the scalp." ***Id.***

Instantly, Appellant used a car rather than a knife, and he did not inflict any injury on the victim, but we have little doubt that the facts, viewed in a light most favorable to the Commonwealth, support a finding that Appellant took a substantial step toward inflicting serious bodily injury. Appellant bumped the victim's car hard enough that she could have run into an embankment, and then intentionally positioned his vehicle so that the victim had no choice but to crash her car into his. Thus, there were two separate impacts between Appellant's car and the victim's. We believe that either one would support a finding that Appellant took a substantial step toward causing serious bodily injury to the victim. We therefore find Appellant's argument lacking in merit.

With his sixth and seventh arguments, Appellant challenges the sufficiency of the evidence in support of his REAP conviction. "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or

serious bodily injury." 18 Pa.C.S.A. § 2705. In support of his argument, Appellant simply re-characterizes the evidence in a light most favorable to the defense. He claims he made "momentary contact" with the victim's vehicle, and then stopped because he realized he had sideswiped her. Appellant's Brief at 26. Our standard for reviewing a sufficiency of the evidence challenge does not permit us to view the evidence in a light most favorable to the defendant, as Appellant invites us to do. As we have already discussed, Appellant committed multiple crimes during a prolonged encounter with the victim during which he threatened her and ultimately caused a vehicle crash. The victim testified that the contact Appellant made as he passed her vehicle on a windy, narrow, two-lane road nearly caused her to run into an embankment. Appellant's choice to stop his car while straddling the double yellow line caused a crash. Either of these actions was more than sufficient to support a conviction for REAP.

In his final argument, Appellant claims the trial court erred in excluding the testimony of Sandra Freeman, the victim's mother. Appellant claims Freeman would have offered testimony as to the victim's character and truthfulness. The Rules of Evidence provide that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Pa.R.E. 608(a). Further, "the character of a witness for truthfulness may not be attacked or

supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]" Pa.R.E. 608(b)(1).

We review the trial court's evidentiary decisions for abuse of discretion. ***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa. Super. 2010). Appellant (representing himself as noted above) told the court that Freeman would testify to "[c]onversations her and I had together when I would call her after having problems with [the victim]. I would call her and ask her what do I do; why is she acting like this, things like that." N.T. Trial, 3/17/17, at 177. The trial court reasoned that Appellant was not offering evidence of the victim's character, but rather evidence of her fault for past difficulties between she and Appellant. Trial Court Opinion, 1/2/18, at 8. We discern no abuse of discretion in the trial court's decision. Appellant's argument fails because he failed to articulate any legitimate basis for the admission of Freeman's testimony.

For all of the foregoing reasons, we conclude that Appellant has failed to raise any meritorious arguments on appeal. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: December 31, 2018

- 14 -