J-A05013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHATAYA MCCOY | : | |
| | : | |
| Appellant | : | No. 44 WDA 2018 |

Appeal from the Judgment of Sentence November 8, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0005753-2017

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY GANTMAN, P.J.E.:  **FILED MARCH 14, 2019**

Appellant, Shataya McCoy, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following her bench trial convictions for two counts of driving under the influence of alcohol or a controlled substance ("DUI") general impairment under 75 Pa.C.S.A. § 3802(a)(1) and one count of DUI high rate of alcohol under 75 Pa.C.S.A. § 3802(b).  For the following reasons, we reverse the duplicate DUI general impairment conviction at count six and affirm the judgment of sentence in all other respects.

The relevant facts and procedural history of this case are as follows.  On March 5, 2017, at 2:54 a.m., Officer Christopher Walker was on routine patrol when he received a dispatch to the scene of a motor vehicle accident.  The 911 report stated the caller was crying and informed the dispatcher that her

vehicle had crashed into a pole and her legs were broken. The 911 report also contained the name "McCoy" and the caller's phone number. Officer Walker arrived on scene approximately five minutes later and observed Appellant lying in the street clutching her legs. The officer noticed Appellant's right leg was bleeding, she had a bump on her head, and she appeared to have urinated. Appellant's speech was slurred, and the officer detected a faint odor of alcohol on her breath. The officer observed a silver Hyundai Sonata across the street with heavy front-end damage. Appellant said she had consumed one drink. Officer Walker did not observe any other person at the accident scene. Due to Appellant's injuries, the officer did not perform field sobriety tests. Appellant was transported to the hospital and a blood draw was performed at 3:44 a.m. Officer Walker obtained a search warrant for the blood draw, which showed Appellant's blood alcohol content ("BAC") was 0.154%.

The Commonwealth charged Appellant with multiple DUI offenses. Appellant proceeded to a bench trial on November 8, 2017. Prior to the start of trial, the parties discussed the admissibility of the 911 report. The Commonwealth indicated that Officer Walker was prepared to testify about the 911 report, unless the court required a custodian to authenticate the report, in which case the Commonwealth would request a continuance to obtain a custodian of records. Defense counsel objected to the admission of the 911 report on hearsay grounds. Defense counsel argued there was no

way to know if Appellant had been the caller or if someone else involved in the accident had made the call. The Commonwealth claimed the 911 report was admissible under the business record or present sense impression exceptions to the rule against hearsay. The court said it would admit the 911 report as a business record.

The Commonwealth called Officer Walker as a witness, who testified, *inter alia*, about his observations of the accident scene and interaction with Appellant. Officer Walker also testified the 911 report is routine procedure, which a dispatcher generates for every 911 call. Officer Walker explained how each 911 report lists the name of the caller and the caller's phone number at the bottom of the report. Here, the report said the caller indicated her vehicle had crashed into a pole and her legs were broken. The report listed the name "McCoy" at the bottom, which is Appellant's last name, and Appellant's phone number. (**See** N.T. Trial, 11/8/17, at 7-24). After Officer Walker's testimony, the Commonwealth and defense rested.[1]

The court convicted Appellant of two counts of DUI general impairment and one count of DUI high rate of alcohol. Appellant proceeded immediately to sentencing. The court sentenced Appellant for the DUI high rate of alcohol conviction to 45 days' house arrest with a concurrent six months' probation. Both DUI general impairment convictions merged with the DUI high rate of

_____

[1] The Commonwealth withdrew counts one, two and three of the criminal information, charging Appellant with DUI involving a minor occupant.

- 3 -

alcohol conviction for sentencing purposes. Appellant timely filed post-sentence motions on November 13, 2017, which the court denied on December 4, 2017. On January 3, 2018, Appellant timely filed a notice of appeal. The court ordered Appellant, on January 8, 2018, to file a concise statement of errors complained of on appeal, which Appellant timely filed on March 12, 2018, after the court granted her an extension.

Appellant raises three issues for our review:

WERE [APPELLANT'S] RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, § 10 OF THE PENNSYLVANIA CONSTITUTION VIOLATED BECAUSE SHE WAS CHARGED AND CONVICTED OF TWO SEPARATE DUI OFFENSES, EVEN THOUGH THERE WAS ONLY ONE INCIDENT?

DID THE TRIAL COURT ABUSE ITS DISCRETION IN ADMITTING THE 911 CALL REPORT OVER DEFENSE OBJECTION, AS IT WAS INADMISSIBLE HEARSAY AND IRRELEVENT?

WAS THE EVIDENCE…INSUFFICIENT TO SUSTAIN [APPELLANT'S] DUI CONVICTIONS AS THE COMMONWEALTH DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT SHE DROVE THE VEHICLE?

(Appellant's Brief at 6).

In her first issue, Appellant argues the Commonwealth charged her with two counts of DUI general impairment at counts five and six, respectively. Appellant asserts both charges arose from the same, single incident of criminal conduct. Appellant claims the only difference between the charges at count five and count six is that the Commonwealth included language at count five

indicating there was an accident resulting in bodily injury, serious bodily injury or death of another person or damage to a vehicle or other property. Appellant insists this language is relevant to a penalty enhancement provided at 75 Pa.C.S.A. § 3804(b)(1), but not a separate substantive crime for which Appellant can be charged. In other words, Appellant maintains the Commonwealth should have charged her with only one count of DUI general impairment, which would have been subject to the "accident resulting in bodily injury" enhancement per Section 3804(b)(1). Appellant concludes the duplicate DUI charges at count five and count six, under Section 3802(a)(1) violated double jeopardy, and this Court must vacate one of the DUI general impairment convictions and remand for resentencing on the remaining DUI general impairment conviction, with the relevant penalty enhancement.[2] We agree Appellant is entitled to some relief.

"[A]n appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*." ***Commonwealth v. Kearns***, 70 A.3d 881, 884 (Pa.Super. 2013), *appeal denied*, 624 Pa. 663, 84 A.3d 1063 (2014).

> The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no

---

[2] Appellant does not contest, in this issue, her conviction at count four for DUI high rate of alcohol.

person shall be subject for the same offense to be twice put in jeopardy of life or limb. Furthermore, the Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Commonwealth v. Jackson*, 10 A.3d 341, 344-45 (Pa.Super. 2010)

(internal citations omitted).

The Vehicle Code defines the offense of DUI, in relevant part, as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.**—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

**(b) High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1), (b). At the time of Appellant's offenses, the Vehicle Code provided varying penalties for DUI offenses, in relevant part, as follows:

**§ 3804. Penalties**

\* \* \*

**(b)  High rate of blood alcohol; minors; commercial vehicles and school buses and school vehicles; accidents**.—Except as set forth in subsection (c), an individual who violates section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property or who violates section 3802(b), (e) or (f) shall be sentenced as follows:

(1)  For a first offense, to:

(i)  undergo imprisonment of not less than 48 consecutive hours;

(ii)  pay a fine of not less than $500 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S.A. § 3804(b) (effective July 9, 2012 to July 19, 2017).

Significantly, the Commonwealth cannot charge a defendant with multiple violations of the **same** DUI provision for a single criminal act. *Commonwealth v. Farrow*, 168 A.3d 207 (Pa.Super. 2017).  In *Farrow*, the Commonwealth charged the appellant with three counts of DUI general impairment under Section 3802(a)(1), arising from one criminal act.  Two of those counts referenced penalty enhancements under Section 3804.  This Court explained:

In the future, where a single DUI offense is subject to

enhancements, the Commonwealth should file a criminal information that sets forth a single count under § 3802.[10] Enhancements under § 3804 may be added as subparts or subparagraphs, as appropriate.

[10] To be clear, the Commonwealth may charge separate counts, as appropriate, where the conduct at issue exposes the defendant to criminal liability under multiple and distinct criminal provisions found in § 3802, such as DUI—general impairment under § 3802(a)(1) and DUI—highest rate under § 3802(c). In such cases, if the Commonwealth seeks to add sentencing enhancements under § 3804, such enhancements may be added as subparts or subparagraphs under each count.

*Id.* at 216; 218 (some internal footnotes omitted).

Instantly, the Commonwealth charged Appellant with DUI general impairment under Section 3802(a)(1) at count five and at count six. Count five also referenced the "accident resulting in bodily injury" penalty enhancement at Section 3804(b). Both counts arose from the same criminal incident involving Appellant's motor vehicle accident on March 5, 2017. In its Rule 1925(a) opinion, the trial court conceded: "In light of the ***Farrow*** decision, which was issued before the trial of this matter, this [c]ourt is constrained to conclude that Count 6, which charges the same subsection of [Section] 3802 as Count 5, [violates] the prohibition against double jeopardy and, as such, should be vacated." (Trial Court Opinion, filed July 17, 2018, at 14). We agree and reverse Appellant's DUI general impairment conviction at count six. ***See Farrow, supra***.

In her second issue, Appellant argues Officer Walker was not qualified

to testify about the 911 report. Appellant asserts Officer Walker did not receive or observe the 911 call that generated the 911 report. Appellant claims Officer Walker did not know who wrote the 911 report or if the dispatcher accurately recorded the caller's information. Appellant contends admission of the 911 report was "deeply prejudicial" because it was **the** key piece of evidence that established an accident had occurred. Appellant maintains the 911 report also linked Appellant to the accident scene, as her phone placed the 911 call and the report mentioned that someone at the scene had injured her leg. Appellant insists the Commonwealth used the 911 report to suggest Appellant was at fault, even though the report did not indicate if Appellant was the driver. Appellant concludes the court erred by admitting the 911 report under the business record exception, and this Court must vacate Appellant's convictions and remand for a new trial. We disagree.

Our standard of review concerning challenges to the admissibility of evidence is as follows:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa.Super. 2010) (internal citations omitted). Further, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the

complaining party." ***Commonwealth v. Robertson***, 874 A.2d 1200, 1209

(Pa.Super. 2005) (internal citation omitted).

> The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. However:
>
> > It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa.Super. 2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005) (internal citations and quotation marks omitted).

"Hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay testimony is inadmissible at trial. ***See*** Pa.R.E. 802. Pennsylvania Rule of Evidence 803 provides exceptions to the hearsay rule, in pertinent part, as follows:

> **Rule 803. Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay,

regardless of whether the declarant is available as a witness:

\* \* \*

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all of these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). A log of police reports satisfies the business record exception.

***Commonwealth v. Lopez***, 57 A.3d 74 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013) (holding detective's reference to police log met business exception to hearsay rule; moreover, detective's testimony was cumulative of other properly admitted evidence, so any error was harmless).

Instantly, Officer Walker testified about the 911 report at issue, in pertinent part, as follows:

[THE COMMONWEALTH]: If you could just take a minute to review that (handing).

Do you recognize that document?

[OFFICER WALKER]: I do.

[THE COMMONWEALTH]: And can you state generally what it is?

[OFFICER WALKER]: It's just the call history we get whenever we get a 911 call.

[THE COMMONWEALTH]: Okay. And is that a kind of play by play of exactly what's happening on the scene?

[OFFICER WALKER]: Correct.

[THE COMMONWEALTH]: Okay. And is there information on that regarding who the caller would be that made the call to 911?

[OFFICER WALKER]: Yes. At the very end of the call, they always list the contact information of who calls, and it gives the last name of McCoy and phone number of 412-999-3040.

[THE COMMONWEALTH]: And this is done by the 911 dispatcher; is that correct?

[OFFICER WALKER]: Okay.

\* \* \*

[THE COMMONWEALTH]: Now, could you tell the [c]ourt, indicate on there what the call was that you were responding to, what the caller stated?

[OFFICER WALKER]: Whenever the call was first generated, at 2:53 when it was entered, they—it was a female was crying saying her legs were broken, caller is outside in the street.

[THE COMMONWEALTH]: Okay. And then taking you

down, I think it's two minutes later, what was next updated as far as what you were responding to?

[OFFICER WALKER]: Caller is now saying her vehicle crashed into a pole. Female screamed, and line disconnected.

[THE COMMONWEALTH]: And based on your training and experience, do you use these [Computer Assisted Dispatch ("CAD")] call logs in your routine as a police officer?

[OFFICER WALKER]: Absolutely.

[THE COMMONWEALTH]: And would you say you use them on any call that a 911 call came in for?

[OFFICER WALKER]: Yes.

[THE COMMONWEALTH]: And the information that you noted earlier when the document was being authenticated, at the end of the second page, is that your—what is your understanding of what the information indicates?

[OFFICER WALKER]: That [Appellant] is the one [who] called 911 to give all this information.

[THE COMMONWEALTH]: And what do you base that on?

[OFFICER WALKER]: That's how they do their callbacks. Say if we go to a domestic and there's no answer at the door. We need someone to come. They call back the number that the original call was generated from, and then they can talk back to them.

[THE COMMONWEALTH]: Okay. So, it's your understanding that the phone number and the name associated with it on that page is the name and the phone number of the caller?

[OFFICER WALKER]: Correct.

(N.T., 11/8/17, at 9-10; 15-16). Defense counsel objected to admission of

the 911 report on hearsay and relevancy grounds. The trial court overruled the objection. In its Rule 1925(a) opinion, the court explained:

> Here, as the above [excerpt] of the testimony reflects, the CAD reports are a log [of] 911 calls maintained in the regular course of business and are transmitted to the responding officer for the purpose of their response to the 911 call. Officer Walker testified that he receives a CAD report for every 911 call he responds to. Here, he used the 911 CAD report in question to assist in his response. Given Officer Walker's testimony, it is clear that the 911 CAD report introduced by the Commonwealth was properly admitted through the business records exception to the rule against hearsay. This [c]ourt was well within its discretion in so admitting it and, as a result, this claim must fail.

(Trial Court Opinion at 8). We agree that Officer Walker was qualified, based on his training and experience, to testify regarding the 911 report in order to meet the business record exception. *See* Pa.R.E. 803(6); *Lopez, supra*. We see no reason to disrupt the trial court's evidentiary ruling. *See Young, supra*.

Moreover, the 911 report did not identify Appellant as the driver of the vehicle. Officer Walker's observations when he arrived on the scene corroborated the information contained in the 911 report, namely, the caller's vehicle had crashed into a pole and the caller's legs were injured. We cannot agree with Appellant's contention that admission of the 911 call was "deeply prejudicial" because it was the "key piece of evidence" showing an accident had occurred, where that fact was obvious to Officer Walker upon his arrival on the scene. For these reasons, any error in admitting the 911 report was harmless. *See Lopez, supra*; *Robertson, supra*; *Passmore, supra*. Thus,

- 14 -

Appellant's second issue merits no relief.

In her third issue, Appellant states she was not in the vehicle when police arrived on the accident scene. Appellant argues the Commonwealth presented no evidence that she was the registered owner of the vehicle. Appellant stresses she did not admit she was the driver of the vehicle at any time. Appellant emphasizes the Commonwealth failed to present any witnesses who actually saw Appellant driving the vehicle. Appellant contends the 911 report did not state who drove the vehicle and lacked details regarding how many people were in the car when the accident took place. Appellant insists there was no evidence of blood in the vehicle or between where Appellant was lying in the street and where the vehicle was parked. Appellant stresses that Officer Walker found her approximately 15 to 20 feet away from the vehicle. Appellant maintains an undisclosed amount of time had passed between when the accident occurred and when Officer Walker arrived on the scene, so other people could have been involved in the accident and left prior to the officer's arrival. Appellant highlights that the 911 report referred to a "caller" and a "female," which suggests more than one person was involved in the accident. Appellant concludes the Commonwealth's evidence was insufficient to establish Appellant drove the vehicle, which was necessary to sustain her DUI convictions, and this Court must reverse all of her DUI convictions and vacate the judgment of sentence. We disagree.

When examining a challenge to the sufficiency of evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The term "operate" as used in the DUI statute "requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa.Super. 2003). Significantly, "an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control

of a motor vehicle." ***Id.*** (holding Commonwealth presented sufficient evidence to prove defendant was driving, operating or in actual physical control of vehicle to sustain his DUI conviction where police arrived at accident scene and found vehicle located on public street behind second car involved in accident; reasonable inference was that defendant drove vehicle to scene; vehicle did not suddenly emerge from nowhere onto public street behind another car that had just been rear-ended; additionally, police arrived on scene within short time and saw only defendant and occupants of second car, who were still seated in second car). In other words, the "actual physical control" element of a DUI conviction is based on the totality of the circumstances; and, if the location of the vehicle supports an inference that it had been driven there, the location "is a key factor in a finding of actual control." ***Commonwealth v. Brotherson***, 888 A.2d 901, 905 (Pa.Super. 2005), *appeal denied*, 587 Pa. 719, 899 A.2d 1211 (2006).

Instantly, the trial court reasoned as follows:

> [Appellant] challenges the sufficiency of the evidence to establish that she was driving the vehicle. However, her operation of the vehicle was clearly established by circumstantial evidence. At 2:54 a.m., a 911 call was placed by a woman who was crying and screaming and stated that her car crashed and she was injured. The caller gave [Appellant's] last name and cell phone number. The 911 call contained no mention of another person driving. When Officer Walker arrived on the scene, [Appellant] was alone in the street, near her car which had been damaged. There was no indication that anyone else had been present and [Appellant] never mentioned or identified anyone else as the driver of the vehicle. The circumstantial evidence is more than sufficient to establish that [Appellant] was driving the

vehicle.

(Trial Court Opinion at 10). We see no reason to disrupt the court's determination as the trier of fact. ***See Hansley, supra***. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to prove Appellant was driving, operating, or in actual physical control of the vehicle. ***See id.***; ***Johnson, supra***; 75 Pa.C.S.A. 3802(a)(1), (b). Accordingly, we affirm the convictions for DUI high rate of alcohol at count four and for the DUI general impairment at count five. We reverse the duplicate DUI general impairment conviction at count six,[3] and we affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2019

---

[3] The Commonwealth agrees Appellant is entitled to this relief. Nevertheless, the duplicate conviction at count six merged with count four for sentencing purposes, so we do not need to remand for resentencing. ***See generally Commonwealth v. Thur***, 906 A.2d 552 (Pa.Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (explaining remand for resentencing is not required where invalid sentence does not disturb overall sentencing scheme).